# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

     v.                                  Civil Action No. 12-CV-303

AUTOZONE, INC., and
AUTOZONERS, LLC.,

        Defendants.

---

# MEMORANDUM OF LAW OF
## DEFENDANTS AUTOZONE, INC. AND AUTOZONERS, LLC
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

**GONZALEZ SAGGIO & HARLAN, LLP**

Attorneys for Defendants AutoZone, Inc.
and AutoZoners, LLC

Emery K. Harlan, Esq.
Matthew J. Feery, Esq.

Gonzalez Saggio & Harlan, LLP
111 East Wisconsin Avenue, Suite 1000
Milwaukee, Wisconsin 53202
414-277-8500 (t) | 414-277-8521 (f)
*emery_harlan@gshllp.com*
*matthew_feery@gshllp.com*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BRIEF FACTUAL BACKGROUND ...................................................................... 2

III. PROCEDURAL BACKGROUND ........................................................................... 5

IV.  STANDARD FOR SUMMARY JUDGMENT ......................................................... 5

V.   ANALYSIS ........................................................................................................ 6

    A.   AUTOZONE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S
        TERMINATION CLAIM BECAUSE MS. ZYCH COULD NOT PERFORM THE ESSENTIAL
        FUNCTIONS OF THE PARTS SALES MANAGER POSITION WITH OR WITHOUT
        REASONABLE ACCOMMODATION AND THEREFORE WAS NOT A QUALIFIED
        INDIVIDUAL WITH A DISABILITY UNDER THE ADA ...................................................... 6

        1.   Lifting Over 15 Pounds Is An Essential Function of the Parts Sales
            Manager Position ............................................................................. 8

            a.   The day-to-day experience and realities of the PSM position at the
                Cudahy store demonstrate that lifting over 15 pounds was an
                essential job function. ................................................................... 9

            b.   AutoZone's business judgment, as also reflected in the Job
                Analysis for the PSM position, was that lifting over 15 pounds was
                an essential function of the PSM position..................................... 12

        2.   Plaintiff's Proposed Accommodation—to Shift Ms. Zych's Heavy Lifting
            Duties to Other Coworkers—Constitutes A Reallocation of Essential Job
            Functions That Is Not A Reasonable Accommodation As A Matter of Law
            ........................................................................................................ 14

            a.   Case law from the Seventh Circuit and other circuits establishes
                that the "occasional help" accommodation is not a reasonable
                accommodation under the ADA. ................................................... 14

            b.   The instances of unacceptable customer service displayed by Ms.
                Zych on account of her inability to lift is not something the ADA
                requires AutoZone to be burdened with........................................ 17

        3.   None of the Arguments Previewed by the EEOC During This Litigation
            Are Sufficient to Satisfy the Agency's Burden of Establishing that Ms.
            Zych was a "Qualified Individual" at the Time of Her Discharge ............ 18

            a.   Any argument that lifting was the responsibility of the Cudahy
                store employees as a whole as opposed to the individual employee

i

impermissibly infringes upon AutoZone's exercise of its business judgment and ignores the realities of AutoZone's operations ...... 19

b.     There is no triable issue of material fact created as a result of Ms. Zych and Mr. Kurta being allowed to avoid heavy lifting at various points during their employment because the courts have consistently held that employers should not be penalized for providing accommodations not required by the ADA. ................. 20

c.     Ms. Zych's testimony regarding her understanding of the medical restrictions imposed by her physician does not save the EEOC's Claims. ........................................................................................... 25

d.     Ms. Zych's performance reviews and the potential congeniality of her coworkers are inapposite to whether she is a "qualified individual" and whether her proposed accommodation is reasonable. .................................................................................... 28

B.     AUTOZONE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM BECAUSE MS. ZYCH WAS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE ADA ..................................................... 29

VI. CONCLUSION .................................................................................................... 30

ii

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Potter*, 193 F. App'x 440 (6th Cir. 2006)......................................................... 15

*Alexander v. Northland Inn*, 321 F.3d 732 (8th Cir. 2003) ............................................ 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 5

*Basith v. Cook Cnty.*, 241 F.3d 919 (7th Cir. 2001) ........................................ 7, 8, 21, 23

*Bivins v. Bruno's, Inc.*, 953 F. Supp. 1558 (M.D. Ga. 1997)........................................... 15

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ................................................. 6

*Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860 (7th Cir. 2010)............................... 7

*Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281 (7th Cir. 1996) ........................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1991) ................................................................. 5

*Cochrum v. Old Ben Coal Co.*, 102 F.2d 908 (7th Cir. 1996) ......................................... 15

*Davis v. Fla. Power & Light*, 205 F.3d 1301 (11th Cir. 2000)......................................... 13

*DePaoli v. Abbot Laboratories*, 140 F.3d 668 (7th Cir. 1998)............................... 8, 12, 20

*Dey v. Milwaukee Forge*, 957 F. Supp. 1043 (E.D. Wis. 1996) ................................ 17, 23

*Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479 (7th Cir. 2002) ...................... 14

*EEOC v. Eckerd Corporation*, 2012 WL 2726766 (N.D. Ga. July 9, 2012) ................... 22

*Emerson v. N. States Power Co.*, 256 F.3d 506 (7th Cir. 2001) ........................................ 8

*Gilbert v. Frank*, 949 F.2d 637 (2d Cir. 1991) ......................................................... 15, 16

*Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F. 3d 674 (7th Cir. 2010).......................................................................................................... 22

*Grimes v. Union Planters Bank, N.A.*, 2004 WL 2378841 (S.D. Ind. Aug. 30, 2004)................. 13

*Hoffman v. Caterpillar, Inc.*, 256 F.3d 568 (7th Cir. 2001) ........................................... 30

*Holbrook v. City of Alphretta, Ga.*, 112 F.3d 1522 (11th Cir. 1997)............................... 22

*Jackson v. City of Chicago*, 414 F.3d 806 (7th Cir.2005)................................................ 30

*Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332 (7th Cir. 1991) ....................... 5

*Knutson v. Schwan's Home Srvc., Inc.*, 711 F.3d 911 (8th Cir. 2013) ............................. 8

*Kotwica v. Rose Packing Co.*, 637 F.3d 744 (7th Cir. 2011)..................................... 6, 15

*Lopez v. Tyler Refrigerator Corp.*, 1999 WL 261899 (N.D. Tex. 1999)......................... 26

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001) ...................................... 15

*Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013)....................... 6, 8, 16, 30

*Malabarba v. Chicago Tribune Co.*, 149 F.3d 690 (7th Cir. 1998)................................. 24

*Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir.1997) ............... 1

*Miller v. Ameritech Corp.*, 214 Fed.Appx. 605 (7th Cir. 2007) ...................................... 1

*Miller v. Ill. Dep't of Corrections*, 107 F.3d 483 (7th Cir. 1997).................................... 8

*Milton v. Scrivner, Inc.*, 53 F.3d 1118 (10th Cir. 1995) ........................................... 15, 16

*Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784 (8th Cir. 1998)................................ 10, 18

*Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) .................................................................. 23

*Otis v. Canadian Valley-Reeves Meat Co.*, 884 F.Supp. 446 (W.D. Okl. 1994).......................... 17

*Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568 (7th Cir. 1989) .................................... 5

*Peters v. City of Madison*, 311 F.3d 835 (7th Cir. 2002)........................................ 13, 14, 19

*Puletasi v. Wills*, 2008 WL 2717146 (9th Cir. 2008) ..................................................... 28

*Robertson v. Neuromedical Ctr.*, 161 F.3d 292 (5th Cir. 1998) ..................................... 15

*Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019 (7th Cir. 1997) ...................... 14, 21, 23

*Soto-Ocasio v. Federal Express Corp.*, 150 F.3d 14 (1st Cir. 1998)............................... 15

iii

*Steffs v. Stepan Co.*, 144 F.3d 1070 (7th Cir. 1998) ..................................................... 26

*Stubbs v. Marc Ctr.*, 950 F. Supp. 889 (C.D. Ill. 1997) ................................................. 15

*Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855 (8th Cir. 2000) ..................... 10, 13, 18

*Thoms v. ABF Freight Sys., Inc.*, 31 F. Supp. 2d 1119 (E.D. Wis. 1998) ....................... 1

*Turner v. City of Paris, Kentucky*, 2012 WL 6706164 (E.D. Ky. 2012) ..................................... 15

*Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538 (7th Cir.1995) ...................... 21, 22, 23

*Vraniskoska v. Franciscan Communities, Inc.*, 2013 WL 4647224 (N.D. Ind. 2013) ................ 20

*Winfrey v. City of Chicago*, 259 F.3d 610 (7th Cir. 2001) ............................................. 21

*Wright v. Owens-Illinois, Inc.*, 2004 WL 1087359 (S.D. Ind. May 14, 2004) ..................... 13, 23

*Young v. United Parcel Serv., Inc.*, 2011 WL 3510997 (D. Md. Aug. 9, 2011) ......................... 26


**Statutes**

42 U.S.C. § 12111(8) ......................................................................................................... 7


**Regulations**

29 C.F.R. § 1630.2(m) (2011) ........................................................................................ 7

29 C.F.R. § 1630.2(n)(2)(ii) ........................................................................................... 19

29 C.F.R. § 1630.2(*o* )(3) ............................................................................................. 30

29 C.F.R. § 1630.2(o) ................................................................................................... 16

29 C.F.R. § 1630.2(o)(1)(ii) ...................................................................................... 6, 7

29 C.F.R. § 1630.2(p)(2)(v) .......................................................................................... 17

29 C.F.R. §1630.2(n)(3) ................................................................................................. 8

29 C.F.R. § 1630.2(n)(2) .............................................................................................. 10

76 Fed. R. 16978 (Mar. 25, 2011) .................................................................................. 6


**Federal Rules of Civil Procedure**

Fed.R.Civ.P. 56(a) ........................................................................................................... 5


**Administrative Interpretations**

*EEOC Questions and Answers on the Final Rule Implementing the ADA Amendments Act of
2008* .......................................................................................................................... 7


**Session Laws**

Pub. L. 110-352 (Sept. 25, 2008) .................................................................................. 6

Case 2:12-cv-00303-WEC   Filed 01/08/14   Page 5 of 36   Document 103

# I.    INTRODUCTION[1]

"Thoms's circumstances were unfortunate. He suffered a serious medical problem that caused him to lose a good job. But federal case law is clear that a fired worker who cannot do the job even with a reasonable accommodation has no claim under the ADA. *Matthews v. Commonwealth Edison Co.,* 128 F.3d 1194, 1195 (7th Cir.1997). 'It is irrelevant that the lack of qualification is due entirely to a disability.' *Id.*"

- *Thoms v. ABF Freight Sys., Inc.*, 31 F. Supp. 2d 1119, 1130 (E.D. Wis. 1998)

"[T]he courts have been reticent, as they should be, to require employers to provide accommodations that necessitate the enlistment of another employee to assist an ADA claimant in performing the essential functions of a job."

- *Miller v. Ameritech Corp.*, 214 Fed.Appx. 605, 609 (7th Cir. 2007) (citation and internal quotation marks omitted).

With these words, both this Court and the Seventh Circuit portended the basis on which Plaintiff Equal Employment Opportunity Commission ("EEOC" or the "Commission") litigates this case. The EEOC, bringing this action on behalf of former AutoZone employee Margaret Zych, contends that AutoZone violated the Americans with Disabilities Act ("ADA") by refusing to reallocate essential functions of Ms. Zych's job and by refusing to force Ms. Zych's coworkers to assume job duties that, due to a lifting restriction, Ms. Zych could no longer perform. Yet the very proposed accommodation that forms the basis of the EEOC's claims has routinely been found to be unreasonable as a matter of law under the ADA by this Circuit and other courts. Despite whatever theoretical constructs or rhetorical appeals to sympathy the EEOC may present, the simple fact of the matter is that the EEOC would have this Court deviate from well-established law and force AutoZone to alter the essential functions of one of its positions.

---

[1] As Defendants have maintained since the outset of this case, the proper defendant in this action is AutoZoners, LLC, which was the employing entity of Ms. Zych and all other alleged actors. *See* Def. AutoZone, Inc.'s Am. Answ. and Aff. Defenses at ¶ 4 [Dkt. # 86].) AutoZoners, LLC and AutoZone, Inc. are separate and distinct legal entities. *See* Defs.' Am. Disclosure Stmt. [Dkt. 14]. Defendants do not concede that AutoZone, Inc. is a proper defendant and reserve the right to present argument in that respect should this matter proceed past summary judgment. For purposes of the present motion only and for the Court's convenience, Defendants will use the term "AutoZone" to refer to AutoZoners, LLC and AutoZone, Inc.

Ms. Zych worked as a Parts Sales Manager ("PSM") at AutoZone. Notwithstanding its title, the PSM position entails a significant amount of physical work, as PSMs are responsible for a variety of duties that require regular lifting of heavy parts over 15 pounds, such as stocking shelves, retrieving parts for customers, going up and down ladders carrying parts, assisting customers with the testing and installation of parts, receiving parts deliveries, receiving parts from customers for questions or returns, and setting up floor displays. (DPFOF ¶¶ 41-48, 55, 58-60) The former PSMs who worked with Ms. Zych all testified that lifting more than 15 pounds was a regular part of their daily job duties. (*Id*. ¶ 55) This is uncontested. (*Id*. ¶ 67)

Yet, the EEOC has now brought this action, essentially arguing that because at least one other employee worked on a shift with Ms. Zych, AutoZone has run afoul of the ADA by not reallocating Ms. Zych's lifting responsibilities to that other employee. But neither the facts nor long-standing case law is on the EEOC's side. Employers are not required to reallocate essential job functions or force employees to "share" in the performance of such job functions. AutoZone has the right to expect its PSMs to be able to perform *all* the essential functions of the position. Ms. Zych could not do that, with or without reasonable accommodation. The EEOC's claims therefore fail, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

## II.    BRIEF FACTUAL BACKGROUND[2]

AutoZone operates a retail store in Cudahy, Wisconsin (Store 1957) that sells auto parts and accessories. (*Id*. ¶ 1) Margaret Zych was an employee of Store 1957 from 2005 until July 13, 2009. (*Id*. ¶¶ 78, 130)  From 2007 until the time of her termination, Ms. Zych was a Parts Sales Manager ("PSM"). Typically, Store 1957 had only six or seven total employees, a total including both full-time and part-time employees, and typically the store was staffed by only two

---

[2] Defendants' Statement of Proposed Material Facts ("DPFOF"), which has been contemporaneously filed herewith, is incorporated by reference as fully set forth herein.

Case 2:12-cv-00303-WEC   Filed 01/08/14   Page 7 of 36   Document 103

employees, one of whom had to be either a PSM or a Store Manager (as only they can open or close the store). (*Id*. ¶¶ 30-32) Because of the nature of business, there would be times when a PSM had to work her own at the open of the store because the other employee on shift failed to show up. (*Id*. ¶ 33) This happened to Ms. Zych on several occasions. (*Id*.)

Store 1957 was divided into two general sections. (*Id*. ¶ 1) There was the common retail space, and then there was the back of the store where hard parts, such as brake rotors, batteries, brake drums, alternators, chassis, and alternators—including parts weighing over 15 pounds and some in excess of 40 or 50 pounds—were stored on shelves 10-12 feet high. (*Id*. ¶¶ 1-2, 18-22, 28-29) The hard parts were accessible via a ladder, which only one employee could use at a time. (*Id*. ¶ 29) The employees who worked in the PSM position at Store 1957, including Ms. Zych's former coworkers, unanimously describe the PSM position as involving regular lifting and carrying of parts, including parts over 15 pounds. (*Id*. ¶¶ 55, 58-60) Even Ms. Zych concedes that lifting over 15 pounds is part of the PSM job. (*Id*. ¶ 66) This day-to-day reality is reflected in AutoZone's Job Analysis for the PSM position, which lists a number of lifting requirements for the PSM position. (*Id*. ¶¶ 53, 55) All the PSMs at the Cudahy store were expected to be able to perform the same job duties. (*Id*. ¶ 52)

PSMs also had numerous customer service duties, as AutoZone stressed the importance of providing excellent customer service in a highly competitive market. (*Id*. ¶ 36) For example, PSMs were expected to greet customers within seconds of the customer walking in the door and to assist the customers in getting whatever part the customer was looking for. (*Id*. ¶ 39) This required retrieving any necessary part from the back of the store and carrying it to the customer. (*Id*. ¶ 41) PSMs were also expected to assist customers in carrying items to or from the customer's car, to install batteries in customers' cars, and to test batteries and alternators brought

3

in by customers—each of which necessarily required lifting over 15 pounds. (*Id*. ¶¶ 42-45)

Customers would also bring in items that weighed upwards of 100 pounds, which PSMs were

expected to receive and handle. (*Id*. ¶ 47) In addition, PSMs were responsible for receiving and

dealing with parts shipments, including daily "hub" shipments that delivered parts, including

some over 15 pounds, that a customer requested but were not in stock. (*Id*. ¶ 69) PSMs also

constructed "planograms"—adjustments to particular areas of merchandise—which sometimes

required the lifting and moving of parts weighing over 15 pounds. (*Id*. ¶¶ 73-75)

 In July 2007, Ms. Zych suffered an injury to her right shoulder. (*Id*. ¶¶ 79) Significantly,

she sustained this injury while on a ladder trying to put away one of the heavy items regularly

stocked and sold at the store, a hub rotor assembly, on a store shelf—something also done

routinely at the Cudahy store by PSMs. (*Id*. ¶ 16, 66) Prior to her injury, Ms. Zych had no

trouble performing the lifting functions of the PSM job, as she could easily lift items 30-50

pounds. (*Id*. ¶¶ 80-83) However, after her injury, Ms. Zych admits that she lacked the ability to

lift a variety of items that were stocked and maintained in the Cudahy store, including gear oil

boxes, oil absorb, steering gears, and totes of parts weighing over 15 pounds.  (*Id*. ¶¶ 85-91)

 Over the next two years, Ms. Zych was on a series of temporary work restrictions,

including restrictions on her lifting. (*Id*. ¶¶ 96-113) Despite the fact Ms. Zych could not perform

the heavy lifting required of a PSM, AutoZone continued to employ her and honored all of the

restrictions issued by the treating medical professionals by temporarily modifying her job duties.

(*Id*. ¶ 114) AutoZone accommodated Zych in this manner for more than two years. On June 18,

2009, Dr. Jeffrey Shovers issued a permanent 15-pound lifting restriction to Ms. Zych. (*Id*. ¶

120) Ms. Zych provided this restriction to AutoZone but did not request any specific

accommodation from AutoZone. (*Id*. ¶¶ 125-126, 134) Ms. Zych was terminated on July 13,

2009. (*Id.* ¶ 131.) The only "accommodations" Ms. Zych and Plaintiff contend could have allowed her to perform the PSM job duties consisted of assistance in lifting or relieving her of lifting heavy objects all together. (*Id.* ¶¶ 127-128, 132-133)

## III.   PROCEDURAL BACKGROUND

Ms. Zych filed a Charge of Discrimination against AutoZone on or around September 8, 2009. The EEOC subsequently brought this action, alleging that AutoZone violated the ADA by failing to accommodate Ms. Zych by providing her with the same accommodations on a permanent basis after June 18, 2009, that it provided to her during the two years between her injury and her termination. (Pl.'s First Am. Compl. ¶ 8)

## IV.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the record shows there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a).  The United States Supreme Court has ruled that a moving party is entitled to judgment as a matter of law when the non-moving party fails to establish the "existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is thus "designed to head off a trial if the opposing party 'does not have a reasonable prospect of prevailing before a reasonable jury — that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice.'"  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) (*quoting Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

## V.    ANALYSIS

Plaintiff alleges that AutoZone terminated Ms. Zych's employment and failed to provide a reasonable accommodation for Ms. Zych's putative disability, both in violation of her rights under the ADA, because it should have accommodated Ms. Zych's permanent restrictions indefinitely as it had for the two years between her injury and permanent 15-pound lifting restriction. (Am. Compl. ¶ 8.) Plaintiff's claim is a non-starter, as the ADA does not require employers to accommodate employees who cannot perform the essential functions of their positions with or without reasonable accommodation.

A.    AUTOZONE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S TERMINATION CLAIM BECAUSE MS. ZYCH COULD NOT PERFORM THE ESSENTIAL FUNCTIONS OF THE PARTS SALES MANAGER POSITION WITH OR WITHOUT REASONABLE ACCOMMODATION AND THEREFORE WAS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE ADA

The EEOC must identify a genuine issue of material fact as to whether: (1) Ms. Zych is disabled[3]; (2) Ms. Zych is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) that she suffered an adverse employment action because of her disability.  *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013). "To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of her claim." *See Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011).

The ADA only affords protection to a "qualified individual," [4] which the EEOC's own regulations define as "an individual who, with or without reasonable accommodation, can

---

[3] For purposes of the present motion, Defendants are assuming, without conceding, that Ms. Zych's impairment constitutes a disability for purposes of the ADA. Defendants reserve the right to contest Ms. Zych's putative status as disabled under the ADA should this matter continue after the dispositive motion stage.

[4] The EEOC regulations interpreting the ADAAA went into effect on May 24, 2011, but were not expressly made retroactive, *see* 76 Fed. R. 16978 (Mar. 25, 2011), and Congress did not expressly authorize their retroactive application. Pub. L. 110-352 (Sept. 25, 2008); *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

6

perform the essential functions of the employment position that such individual holds or desires."

42 U.S.C. § 12111(8); *see also* 42 U.S.C. § 12112(a); *Basith v. Cook Cnty.*, 241 F.3d 919, 927

(7th Cir. 2001). The EEOC bears the burden of establishing that Ms. Zych is a qualified

individual with a disability. *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir.

1996). This requires evidence that: (i) Ms. Zych possess the requisite knowledge, skill,

experience, etc. for the job at issue, and (ii) Ms. Zych "can perform the essential functions of the

position held or desired, with or without reasonable accommodations." *Budde v. Kane Cnty.*

*Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010).

As is pertinent to Plaintiff's claims in this action, the term "reasonable accommodation"

means "modifications or adjustments to the work environment, or to the manner or

circumstances under which the position held or desired is customarily performed, *that enable a*

*qualified individual with a disability to perform the essential functions of that position.*" 29

C.F.R. § 1630.2(o)(1)(ii) (italics added).  It is axiomatic that employers are not required to

provide accommodations to employees who are not qualified, that is, unable to perform the

essential functions of the job with or without reasonable accommodations. Accordingly, the

ADA does not require employers to keep employees who cannot perform the essential functions

of their positions with or without reasonable accommodations.  It is also well established that in

complying with its duty to provide reasonable accommodation to qualified individuals with a

---

Therefore, Defendants respectfully submit that the regulations do not apply to this matter will accordingly use the regulations and wording therein as they existed prior to May 24, 2011. Even assuming without conceding that the new regulations apply, however, neither the ADAAA nor the regulations interpreting the ADAAA changed either the definition of the terms "qualified," "direct threat," "reasonable accommodation," and "undue hardship," or changed the respective burden of proof for those terms. *See EEOC Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008* at Question 29 ("Does the ADAAA change the definitions of "qualified" . . . [and] "undue hardship" . . . .? No."); *see also* 29 C.F.R. § 1630.2(m) (2011) ("The term '*qualified*,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.") (italics in original).

disability, an employer does not have to eliminate an essential function, *i.e.*, a fundamental duty, of the position. This is precisely because a person with a disability who is unable to perform the essential functions, with or without reasonable accommodations is *not* a "qualified" individual with a disability within the meaning of the ADA.

### 1. Lifting Over 15 Pounds Is An Essential Function of the Parts Sales Manager Position

The Seventh Circuit has counseled that in determining the essential functions of a position, courts "look to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) (citation omitted); *see also Basith*, 241 F.3d at 927. Moreover, "[a]n essential function need not encompass the majority of an employee's time, or even a significant quantity of time to be essential . . . . Rather, an essential function [need only] be a fundamental duty of the job." *Basith*, 241 F.3d at 929 (finding that the delivery function of plaintiff's position, which took up only 45 minutes of an 8-hour day, to be essential) (*citing Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir. 1997)); *Emerson v. N. States Power Co.*, 256 F.3d 506, 513 (7th Cir. 2001) (holding that ability to take safety-sensitive calls was an essential job function of plaintiff's position even though such calls only constituted 5% of the job); *see also Knutson v. Schwan's Home Srvc., Inc.*, 711 F.3d 911 (8th Cir. 2013) (rejecting plaintiff's argument that because driving was performed only once a week or every few weeks, it was not an essential function of plaintiff's position). Further, although courts may "look to see if [an] employer actually requires all employees in a particular position to perform the allegedly essential functions," courts "do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." *DePaoli v. Abbot Laboratories*, 140 F.3d 668, 674 (7th Cir. 1998).

8

In this case, it cannot reasonably be disputed that working in the Parts Sales Manager position at AutoZone requires consistent, regular lifting of items over 15 pounds on a daily basis; nor can it be reasonably disputed that all PSMs in the Cudahy store were expected and required to regularly lift items over 15 pounds on a daily basis. This is manifest not only from a Job Analysis utilized by the company, but also by the day-to-day realities of the PSM position as reflected by the consistent testimony of Ms. Zych's coworkers. Even Ms. Zych has described the PSM job she held as requiring regular lifting of items weighing more than 15 pounds. Indeed, Ms. Zych sustained the impairment at issue in this case while on a ladder, lifting one of the heavy parts stocked and sold at the Cudahy store.

> a. **The day-to-day experience and realities of the PSM position at the Cudahy store demonstrate that lifting over 15 pounds was an essential job function**

The requirement that PSMs be able to lift and carry items over 15 pounds on a consistent and daily basis is reflected by the work realities of the Cudahy store where Ms. Zych worked. The uncontroverted evidence demonstrates that the Cudahy store carried no excess staff, typically having only 6 or 7 total employees at any one time. (DPFOF ¶ 30) Typically, only two employees are on duty at any one time, one of whom must be a managerial employee such as a PSM. (*Id*. ¶ 32) With this level of staffing, PSMs were expected and required to be able to perform all functions of the PSM position, from opening and closing the store to assisting customers. (*Id*. ¶ 30) This was especially the case because, due to turnover or staff running late, a managerial employee opening the store could be the only employee on duty for a period of time and responsible for taking care of any customer walking through the door. (*Id*. ¶ 33) Ms. Zych even testified that on occasion she would be the only employee working the store when it opened because the other employee was running late or otherwise unable to make it to work on time.

(*Id*.) Courts have recognized, consistent with the guidance of the federal regulations, that employers with limited staffing have a particular need to ensure that their employees are capable of performing the duties and responsibilities of their jobs. *See*, *e.g.*, *Moritz v. Frontier Airlines, Inc.,* 147 F.3d 784 (8th Cir. 1998) (holding that plaintiff gate agent was not a qualified individual because, *inter alia*, defendant's limited budget and staffing at airport required all gate agents to perform all their assigned job functions) (citing 29 C.F.R. § 1630.2(n)(2)); *Summerville v. Trans World Airlines*, *Inc*., 219 F.3d 855 (8th Cir. 2000) (holding plaintiff not qualified individual because defendant's limited staffing on certain shifts required all gate agents on those shifts to perform all the functions of their job).

As a retail business, customer service was AutoZone's primary focus. (DPFOF ¶ 36) Employees were trained on customer service and reminded that customer service is paramount, (*id*.), and it is incontrovertible that customer service at AutoZone necessarily involved the need to lift and carry items over 15 pounds. PSMs routinely retrieved parts weighing over 15 pounds for customers, including by going up and down a ladder to retrieve heavy parts from upper shelves, and PSMs received heavy parts from customers, whether for testing, exchanges, returns, or questions. (*Id*. ¶¶ 41-48, 55, 58-60) These parts were often unmarked and could range from the very light—a few pounds—to upwards of 100 pounds. (*Id*. ¶ 47) There was no way to predict what part(s) a customer would bring in, and PSMs were expected to be able to lift whatever was brought through the door. (*Id*. ¶¶ 45-47) PSMs also did parts testing and part installation, both of which necessarily involved lifting. (*Id*. ¶ 43) When not doing testing, PSMs were expected to assist customers in bringing parts out to the customers' automobiles. (*Id*. ¶ 42) These were all critical aspects of the PSM's customer service because, as Mr. Morales, the former District

Manager, testified, if AutoZone was not serving the customer, someone else would, as all the other auto parts stores were out to "eat AutoZone's lunch." (*Id*. ¶ 38)

When PSMs were not assisting customers, their job duties consisted of a number of daily tasks that involved lifting parts over 15 pounds. For example, PSMs were responsible for stocking store shelves, which Ms. Zych admitted was a "key part" of her PSM duties and a duty that required the ability to lift items weighing over 15 pounds. (*Id*. ¶ 66) PSMs received daily hub-store shipments that could contain totes and parts weighing over 15 pounds. (*Id*. ¶ 69) PSMs were also responsible for setting up "planograms," which was physical readjusting of an area of merchandise, such as brake rotors or alternators, or sales displays, for new products or an old product being shifted out. (*Id*. ¶¶ 73-75) The item to be displayed in a planogram was determined by AutoZone corporate, not each individual store, and when a new planogram came out, PSMs were responsible for moving inventory and setting up the new display, which necessarily involved lifting and carrying parts, including sometimes parts over 15 pounds. (*Id*.)

Indeed, employees who worked as PSMs in the Cudahy store testified as to the wide range and number of parts the store carried that weighed in excess of 15 pounds, including brake drums, brake rotors, batteries, alternators, chassis, radiators, and cases of oil, and it was not unusual for those parts to weigh over 30 or 40 pounds. (*Id*. ¶¶ 2-18) Mr. Maldonado described lifting over 15 pounds as a regular occurrence in his PSM position, including the lifting of 40-pound batteries and brake rotors and brake drums weighing at least 20 pounds. (*Id*. ¶ 59) Mr. Garcia described lifting 60 pounds as a regular part of his PSM duties and testified there were times as a PSM where he lifted all day. (*Id*.) Mr. Stewart described lifting as a "constant and consistent" occurrence in his PSM role, including regular lifted parts in excess of 15 pounds, with lifting of parts over 30 or 40 pounds not unusual. (*Id*. ¶ 58) Each of these fellow PSMs also

11

testified that this lifting was required when assisting customers, receiving parts from customers, receiving hub and truck deliveries, and when stocking parts on the shelves. (*Id*. ¶¶ 42-47, 67-70) That all the other PSMs lifted regularly is indicative of the essential nature of the lifting function.[5] *See DePaoli*, 140 F.3d at 674 ("Although we look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions, we do not otherwise second-guess the employer's judgment in describing the essential requirements for the job.") (internal and following citations omitted). Moreover, the store's stock was not static. AutoZone reviewed its merchandise annually and continually changed what parts or brands it stocked, including by adding or no longer carrying certain parts that may weigh over 15 pounds. (DPFOF ¶ 26) Given all of the foregoing considerations, there can be little reasonable dispute that lifting was required and is an essential function of the PSM position.

Significantly, Ms. Zych's own testimony in this matter confirms that lifting items weighing more than 15 pounds was an essential function of the PSM job she held. Prior to her injury, Ms. Zych lifted heavy items such as rack and pinions, radiators, brake drums, alternators, anti-freeze cases and larger batteries. (*Id*. ¶¶ 80-83) When describing PSM duties on a job applications, she listed duties she admits require lifting over 15 pounds. (*Id*. ¶ 67) Stocking parts, another key duty, required similar heavy lifting. (*Id*. ¶ 66) In fact, Ms. Zych cannot recall a specific day when she did not have to lift more than 15 pounds as a PSM. (*Id*. ¶ 60)

**b.    AutoZone's business judgment, as also reflected in the Job Analysis for the PSM position, was that lifting over 15 pounds was an essential function of the PSM position**

It is undisputed AutoZone has prepared a Job Analysis setting forth the key duties and responsibilities for the PSM position. (*Id*. ¶¶ 53-54) This Job Analysis expressly lists lifting

---

[5] It is noteworthy in this regard that Mr. Maldonado and Mr. Garcia no longer worked for AutoZone at the time of their depositions and had in fact discharged by AutoZone. (DPFOF ¶ 77) Yet, even they confirmed the nature of PSM position.

requirements far exceeding Ms. Zych's 15-pound lifting restriction, including constant carrying

of up to 50 pounds, frequent lifting from floor to waist of parts up to 75 pounds, and frequent

horizontal lifting of parts up to 25 pounds.[6] Messrs. Maldonado, Garcia, and Stewart all

confirmed this job analysis accurately reflected their lifting requirements as PSMs and the day-

to-day realities of their PSM jobs. (*Id.* ¶¶ 55, 58-59) It is also undisputed AutoZone specifically

discussed the need to be able to do heavy lifting with applicants. (*Id.* ¶ 51)

Moreover, courts in this and other circuits have routinely found that even if, unlike here,

heavy lifting was only occasionally performed as a job function, the infrequent nature of the

lifting does not negate its essential nature. *See Grimes v. Union Planters Bank, N.A.*, 2004 WL

2378841, *16 (S.D. Ind. Aug. 30, 2004) ("The fact that the lifting of heavy items [over 20

pounds] was only occasional (though a regular daily occurrence) does not affect its status as an

essential function.") (citing *Peters v. City of Madison*, 311 F.3d 835, 845 (7th Cir. 2002) (("Even

Peters admits that heavy lifting is required at times, and his argument that such lifting is

infrequent does not preclude it from being an essential function of the job.") and collecting

cases); *Summerville*, 219 F.3d 855 (lifting was an essential function of the plaintiff's position

even though it was only done occasionally, perhaps just for a few minutes, each week).

---

[6] AutoZone acknowledges the existence of another Job Analysis for the PSM position. While that Job Analysis does not expressly set forth specific pounds that a PSM must be able to lift, it does affirm that frequent lifting is unquestionably an essential function of the PSM job. (DPFOF ¶ 56) Indeed, it specifically lists "stocking" as one of the task performed by PSMs and provides that PSMs handle "Automotive Parts and Supplies" and operates, among other things, 2-wheelers, palate jacks, brake lathes, battery and alternator testers, step ladders, and utility carts. (*Id.*) All of these things are fully consistent with a position that entails heavy lifting and is consistent with the testimony of the other PSMs regarding their day-to-day essential job functions. Moreover, the existence of another Job Analysis in no way negates the sworn testimony of Messrs. Garcia, Maldonado, and Stewart, each of whom confirmed the PSM lifting requirement. (*Id.* ¶¶ 58-59) Further, the Job Analysis containing the lifting specifications has been in existence at least 12 years, thus predating Ms. Zych's employment with AutoZone by several years. (*Id.* ¶ 54) *See also Davis v. Fla. Power & Light*, 205 F.3d 1301, 1306 (11th Cir. 2000) (rejecting plaintiff's argument that, as a matter of law, overtime could not be found to be an essential function because it was not listed in job description); *Wright v. Owens-Illinois, Inc.*, 2004 WL 1087359 (S.D. Ind. May 14, 2004) (rejecting plaintiff's argument that lack of job description precluded employer from arguing plaintiff was not qualified for his position).

13

In short, there can be no genuine issue of material fact as to whether lifting heavy parts is an essential function of the PSM position. The uncontroverted and incontrovertible evidence of record, as well as plain common sense, establishes a PSM working in a leanly staffed store like the Cudahy store needs to be able to lift the parts it stocks and sells to customers.

**2.** **Plaintiff's Proposed Accommodation—to Shift Ms. Zych's Heavy Lifting Duties to Other Coworkers—Constitutes A Reallocation of Essential Job Functions That Is Not A Reasonable Accommodation As A Matter of Law**

**a.** **Case law from the Seventh Circuit and other circuits establishes that the "occasional help" accommodation is not a reasonable accommodation under the ADA**

Against the weight of this evidence, Ms. Zych—who requested no accommodation for her permanent lifting restriction from AutoZone—now suggests, and Plaintiff offers, only one potential accommodation that would supposedly allow Ms. Zych to perform the essential functions of heavy lifting in the PSM position: have someone else do it, either on his or her own or through constant assistance to Ms. Zych. Mr. Morales testified that this "accommodation" would entail other employees performing that aspect of Ms. Zych's PSM job that Ms. Zych would otherwise be expected to perform. (DPFOF ¶ 128) That proposed accommodation is, in no uncertain terms, the alteration and reallocation of the essential function of lifting from the PSM position. Such an accommodation is not reasonable as a matter of law and not required by the ADA, as the Seventh Circuit has consistently held. *See e.g.*, *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 484 (7th Cir. 2002) ("Under the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee."); *Peters*, 311 F.3d at 845 (holding accommodation not reasonable when it would require another person to perform an essential function of the plaintiff's job); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997) (same); *Cochrum v. Old Ben Coal Co.*, 102 F.2d 908, 913 (7th Cir.

1996) ("reasonable accommodation does not encompass reallocation of essential job functions");

*Kotwica*, 637 F.3d at 750 (noting that the Seventh Circuit has "previously held that the ADA does not impose an obligation on employers to create a new position which contains a subset of the duties performed by those in an existing position . . . ."); *see also Stubbs v. Marc Ctr.,* 950 F. Supp. 889, 895 (C.D. Ill. 1997) (plaintiff's "requested accommodation to temporarily shift his duties to his coworkers and subordinates is unreasonable as a matter of law.").

Courts in other federal circuits have similarly held that reallocation or elimination of essential job duties is, as a matter of law, not a reasonable accommodation. *See*, *e.g*., *Soto-Ocasio v. Fed. Express Corp.,* 150 F.3d 14, 20 (1st Cir. 1998) (holding that requiring employer to allocate other employees to complete plaintiff's work is unreasonable); *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir. 1991) ("'reasonable accommodation' does not mean elimination of any of the job's essential functions"); *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) ("[T]he ADA does not require an employer to relieve the employee of any essential functions of the job[.]"); *Adams v. Potter*, 193 F. App'x 440, 445 (6th Cir. 2006) (plaintiff not qualified individual because proposed accommodation would require elimination of essential job function); *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112-13 (8th Cir. 1995) (elimination of essential job functions not a reasonable accommodation); *Milton v. Serviner*, 53 F.3d 1118, 1124 (10th Cir. 1995) (same); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001) (ADA does not require elimination of essential functions); *Turner v. City of Paris, Ky.*, 2012 WL 6706164, *2 (E.D. Ky. Dec. 26, 2012) (holding that plaintiff's requested accommodation of "shared lifting" of anything over 10 pounds "would unquestionably shift essential functions [of lifting] to another employee" and is not a reasonable accommodation as a matter of law); *Bivins v. Bruno's, Inc.*, 953 F. Supp. 1558, 1562 (M.D. Ga. 1997) (holding plaintiff's requested

15

accommodation of "help from other clerks" in lifting anything over 10 pounds unreasonable as a matter of law under the ADA and noting that "[a] nurse can do the job of a neurosurgeon if given a little 'help' with the more technical aspects of diagnosis and surgery. The analogy may be extreme, but the principle at stake is identical: *anyone* can do *anything* with 'help' from another person who does all the difficult parts of the job for you. The inescapable fact is that a stock clerk position consists almost entirely of lifting, reaching, carrying, pushing and pulling items, some of which are heavy and some of which are not. Bivins simply could not do a lot of this type of activity at the time.").

Just last year, the Seventh Circuit reaffirmed this principle, stating that a plaintiff's proposed accommodation of having another employee assist her in lifting objects weighing over 20 pounds, and thus in excess of her work restriction, was not a reasonable accommodation. *Majors*, 714 F.3d at 534 ("The only accommodation Ms. Majors proposed was to have a material handler lift the heavy objects for her. To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation.") (internal footnote omitted) (citations omitted).

Indeed, the Eastern District of Wisconsin previously addressed an argument concerning a requested-for accommodation similar to Ms. Zych's requested accommodation and found it unreasonable under the ADA, and its analysis is worth quoting at length:

> Plaintiff further argues in his brief that, as a reasonable accommodation, he should have been permitted to ask for the occasional assistance of other machine hand workers in performing his machine hand job.
> . . . .
> The ADA does not require an employer to reallocate job duties in order to change the essential functions of a job. *Milton*, 53 F.3d at 1124; *see also*, 29 C.F.R. § 1630.2(o); *Gilbert v. Frank*, 949 F.2d 637, 644 (2nd Cir. 1991) (plaintiff's suggestion that co-workers could assist him with heavy lifting as a reasonable accommodation

16

rejected as eliminating essential function of plaintiff's job; such task reallocation would slow down and reduce the productivity of the operation). The reallocation of job responsibilities constitutes a change in the essential functions of a job and is not required under the ADA. *See Otis v. Canadian Valley-Reeves Meat Co.*, 884 F.Supp. 446, 449 (W.D. Okl. 1994). Requiring fellow workers to assist the plaintiff would involve a reallocation of some job duties. It also would impact on the ability of other employees to perform their duties and on the ability of the defendant to operate its business. *See* 29 C.F.R. § 1630.2(p)(2)(v). Such accommodation would impose an undue hardship on the defendant and is not required by the ADA.

*Dey v. Milwaukee Forge*, 957 F. Supp. 1043, 1052 (E.D. Wis. 1996). Thus, the accommodation Plaintiff seeks is not reasonable as a matter of law.

> **b.** **The instances of unacceptable customer service displayed by Ms. Zych on account of her inability to lift is not something the ADA requires AutoZone to be burdened with**

Frequently in ADA cases like the instant one, courts and parties spend time attempting to predict how a particular proposed accommodation will affect an employer's operations. Here, the parties and this Court need not engage in any such predictions, for the undisputed facts reveal some of the results at Store 1957 of Ms. Zych's inability to fully perform her PSM position. On several occasions, customers came to the Cudahy store looking to purchase parts exceeding the weight of Ms. Zych's restriction. (DPFOF ¶¶ 117-119) Ms. Zych could not lift the parts, and, as a consequence, the customers were turned away and told to return when there would be store personnel on duty who could actually get the parts they sought. (*Id.*) Other times customers were forced to wait until someone besides Ms. Zych could assist them. (*Id.*) Such an outcome is unacceptable in any industry, but particularly one like the auto parts business where AutoZone faced aggressive competition from other retailers. (*Id.* ¶ 38) Nothing in the ADA, the EEOC's regulations, or the case law requires AutoZone to accept this situation. On the contrary, courts have consistently affirmed employers' decisions to hold their employees to the performance of

17

*all* essential job functions. *See*, *e.g.*, *Frontier Airlines*, 147 F.3d 784 (employer entitled to expect all gate agents to perform functions of their position); *Summerville*, 219 F.3d 855 (same).

In sum, no matter what phraseology the EEOC offers—"occasionally help," "help a little," "work together, "provide occasional assistance," etc.—the outcome under the law is the same. The ADA does not compel AutoZone to have other employees perform heavy lifting duties that are an intrinsic part of the PSM job. And, because the uncontroverted evidence in the record is that Ms. Zych's physician issued her a permanent 15-pound lifting restriction in June 2009, she no longer could meet the qualifications for the PSM job. Hence, summary judgment should be granted to AutoZone on her ADA termination claim.

### 3. None of the Arguments Previewed by the EEOC During This Litigation Are Sufficient to Satisfy the Agency's Burden of Establishing that Ms. Zych was a "Qualified Individual" at the Time of Her Discharge

Aside from having no legal obligation to exempt Ms. Zych from the heavy lifting responsibilities of the PSM position she held, doing so would be entirely incompatible with AutoZone's business operations. It is incontrovertible that AutoZone operates in a highly competitive environment. In AutoZone's judgment, providing consistent, high-level customer service is critical to maintaining its position as one of the country's leading auto parts retailers. Not surprisingly, each position in AutoZone's retail locations is primarily focused on providing outstanding customer service. Ms. Zych herself testified that, along with putting away parts, customer service was the "vast majority" of the PSM job.[7] (DPFOF ¶ 64) Unfortunately, in a highly dynamic retail environment like the one AutoZone operates in, there is simply no way to ensure that a PSM like Ms. Zych would not be called upon to do heavy lifting to meet a

---

[7] AutoZone's emphasis on customer service is reflected in the slogans taught to its employees, including "Drop, Stop 30/30," which told employees to stop and drop what they were doing to great customers and "Gotcha" service, which told employees to help brings things to/from customer cars. (DPFOF ¶ 39)

18

customer's need. Even if AutoZone took great care to schedule someone who was capable to do heavy lifting to work on Ms. Zych's shift, the reality is that employees sometimes fail to show up for scheduled shifts, leaving Ms. Zych alone on shift. Additionally, given the fluctuations of customer traffic flow and needs at a particular time, the other employees may simply be helping their own customers with lifting needs and not available to assume Ms. Zych's heavy lifting task. (*See id.* ¶¶ 118-119) Finally, it is incontrovertible that typically only two employees worked on a shift at the same time, (*id.* ¶ 32), leaving a limited number of employees at the Cudahy store to assume Ms. Zych's heavy lifting duties. Yet, these employees were responsible for myriad tasks, including stocking shelves, retrieving parts for receiving parts from customers, receiving deliveries, and assembling planograms. (*See id.* ¶¶ 41-48, 55, 58-60) An employee assisting Ms. Zych would have to neglect his own job duties—or his own customers. (*Id.* ¶ 138) Very simply, the PSM needed to be able to perform all the functions of the position. *See* (*Id.* ¶ 30); 29 C.F.R. § 1630.2(n)(2)(ii) ("[A] function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.").

>   a.   **Any argument that lifting was the responsibility of the Cudahy store employees as a whole as opposed to the individual employee impermissibly infringes upon AutoZone's exercise of its business judgment and ignores the realities of AutoZone's operations**

Nor can the EEOC prevail by arguing that it was not essential that each PSM be able to do heavy lifting, but rather, it is merely necessary that the employees as a whole be able to do so. There are two basic problems with this argument. First, it impermissibly infringes upon AutoZone's right to exercise its business judgment as to what duties constitute the essential functions of a position. *See Peters*, 311 F.3d at 845 (noting that the Court "do[es] not second-guess the employer's judgment" that plaintiff's position, operator, must be able to perform all the

19

daily operational and construction tasks assigned to laborers); *DePaoli*, 140 F.3d 674 (noting that

court will see if employees in position perform alleged essential functions but otherwise will not

second-guess employer's judgment). Second, that argument ignores the reality of how the

Cudahy store actually operated. Typically, only two employees were on staff at any one time.

(DPFOF ¶ 32) Accordingly, if one employee was assisting a customer, the other employee on

duty had to assist any other customers with their needs—whether that be retrieving a heavy brake

rotor or doing a battery installation or receiving an alternator to test—on his or her own. If there

were no customers, that employee was expected to continue stocking shelves and performing

other tasks that necessarily involved lifting. Thus, while the "collegiality and helpfulness" of Ms.

Zych's coworkers is commendable, it does not change the fact that *each* PSM was assigned the

same duties and expected to lift objects in excess of 15 pounds on a consistent and regular basis.

*See Vraniskoska v. Franciscan Cmtys, Inc.*, 2013 WL 4647224, *9-10 (N.D. Ind. Aug. 29, 2013)

(rejecting argument of plaintiff, who was terminated after receiving a medical restriction that

prevented her from pushing her linen cart, that transportation of linen cart was not an essential

job function because it was only required that her team "collectively" accomplish that task

because that particular task was assigned to plaintiff). Additionally, even if PSMs at the Cudahy

store did not perform all the essential functions of the PSM position at a particular time, that does

not render the functions not performed as unessential. *See* Section V.A.1, *supra*.

> **b.** **There is no triable issue of material fact created as a result of Ms. Zych and Mr. Kurta being allowed to avoid heavy lifting at various points during their employment because the courts have consistently held that employers should not be penalized for providing accommodations not required by the ADA**

In its pleadings and written discovery responses, the EEOC makes much of the fact that

Ms. Zych was allowed to work as a PSM at times when she was unable to do heavy lifting and

Mr. Kurta, _who was not a PSM_, was allowed to work at the Cudahy store despite lacking the use of one of his arms. But these facts do not undermine AutoZone's contention that heavy lifting is an essential function of the PSM position Ms. Zych held or make the proffered requested accommodation any more reasonable as a matter of law. Ms. Zych was returned to light-duty work following her injury pursuant to return-to-work program, and her restrictions were honored while she was recovering and expected to regain a functional capacity that would permit her to perform the essential functions of her position. (DPFOF ¶ 96) Courts have repeatedly held that an employer's temporary exempting of an employee from certain physical demands of a given position does not create a triable issue as to whether those demands are essential functions of the job at issue. _See Winfrey v. City of Chicago_, 259 F.3d 610, 616 (7th Cir. 2001) (rejecting plaintiff's argument that limited job functions contained in modified ward-clerk position provided to plaintiff must constitute the entirety of the ward-clerk position's essential job functions and noting "the creation of a modified position for [plaintiff] does not demonstrate that the four duties he performed are the only essential duties of the unmodified job he now seeks."); _Basith_, 241 F.3d at 932 (holding that although the employer went above and beyond the requirements of the ADA by temporarily reallocating essential functions of a job and creating a special assignment for the plaintiff, that did not affect the position's essential job function or make the plaintiff a "qualified individual" under the ADA).

If the EEOC's argument were accepted, AutoZone would in essence be penalized for going above and beyond the ADA's requirements—the ultimate "no good deed goes unpunished." _See Sieberns_, 125 F.3d at 1023 (holding that employee could not perform essential job functions and, in noting that plaintiff was given light duty work, that "[e]mployers should not be discouraged from doing more than the ADA requires . . . ."); _Vande Zande v. Wisconsin Dep't_

21

*of Admin.,* 44 F.3d 538, 545 (7th Cir.1995) ("[I]f the employer . . . bends over backwards to accommodate a disabled worker—goes further than the law requires . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching accommodation.").[8]

AutoZone was perfectly within its rights to end Ms. Zych's employment once she received permanent restrictions that confirmed she would be unable to do the heavy lifting required for the PSM job. The ADA imposes no legal mandate on AutoZone to continue the temporary accommodations it provided Ms. Zych and, in effect, create a permanent light-duty position for her. *See Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F. 3d 674, 680 (7th Cir. 2010). Further, that Ms. Zych was employed for a short period after presenting her permanent restriction of AutoZone is immaterial. AutoZone was not required to continue allowing Ms. Zych to avoid performing the essential functions of her PSM job.

Significantly, in *EEOC v. Eckerd Corporation*, 2012 WL 2726766 (N.D. Ga. July 9, 2012), the EEOC argued the defendant retail store violated the ADA by refusing to provide a former employee the accommodation of sitting portions of the work day because, in part, the employer had accommodated the employee's medical restrictions and allowed her to do exactly that for *eight years*. In rejecting the EEOC's argument and finding that the sitting accommodation at issue was not reasonable as a matter of law, the court observed, "[I]t is well-settled that an employer's previous willingness to provide a certain accommodation does not establish that the accommodation is reasonable or required." *Id*. at *7 (citation omitted).

---

[8] This is the case in other circuits as well. *See*, *e.g*., *Holbrook v. City of Alphretta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997) (stating that when an employer's past accommodations have "exceeded that which the law requires," a "decision to cease making those accommodations that pertained to the essential functions of the job does not violate the ADA.").

22

Likewise, the EEOC would gain no ground by relying upon AutoZone's employment of Mr. Kurta. As this Court and courts in other circuits have held, just because an employer chooses to go beyond the requirements of the ADA with one employee does not mean that it is required to do so for all subsequent employees or make such requested accommodations reasonable as a matter of law. *See Dey*, 957 F. Supp. at 1054 ("The fact that an employer had offered certain accommodations to some employees as a matter of good faith does not mean that the same accommodations must be extended to plaintiff as a matter of law."); *see also Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995) (rejecting plaintiff's argument that because certain accommodations were provided to disabled coworkers, those same accommodations should be provided to plaintiff because, *inter alia*, "such a regime would discourage employers from treating disabled employees in a spirit that exceeds the mandates of federal law. If an employer undertook extraordinary treatment in one case, the same level of accommodation would be legally required of it in all subsequent cases; in other words, a good deed would effectively ratchet up liability, and thus not go unpunished."(citing *Vande Zande*, 44 F.3d at 545)); *Wright v. Owens-Illinois, Inc.*, 2004 WL 1087359, *15 (S.D. Ind. May 14, 2004) ("Second, the fact that Owens makes an accommodation for [fellow set up employee] Heady does not mean that heavy lifting and pushing/pulling are not essential functions of the set up position, nor does it mean that Owens had to make a similar accommodation for Wright.") (citing *Basith*, 241 F.3d at 930, and *Sieberns*, 125 F.3d at 1022).

Moreover, the facts and circumstances concerning Mr. Kurta's employment and ability to perform the functions of *his* position—as opposed to the essential functions of the PSM position—are entirely immaterial to the proper disposition of this motion. The question of whether an individual is a qualified individual with a disability must be determined with

reference to the position held or desired by the individual—it is of no moment to that analysis that the individual might be able to perform the essential functions of a different position with or without reasonable accommodation. Likewise, the question of whether reasonable accommodations are available for a disabled employee's restrictions must be made with reference to the position held or desired by the individual—it is of no moment that his or her restrictions could be accommodated if he/she held a different position. Thus, the issue of whether Mr. Kurta could perform the essential functions of his position or whether his "restrictions," if any, could be accommodated so as to enable him to perform the essential functions of *his* position simply have no bearing and shed no light on the question of whether Zych could perform the essential functions of *her* position with or without reasonable accommodation. *Cf. Malabarba v. Chicago Tribune Co*., 149 F.3d 690, 697-98 (7th Cir. 1998) ("When Malabarba was released from the packaging department, he was working on temporary 'light-duty' assignments as a packager, not driving a fork-lift as a permanent material handler. In fact, during his limited duration as a material handler, Malabarba continued to be classified as a packager. The relevant question before us is whether he had the ability to perform the essential functions of a packager, with or without accommodation.")

Indeed, Mr. Kurta is not similarly-situated to Ms. Zych in any meaningful way. At the time of her discharge, Ms. Zych was working full-time as a PSM. In that capacity, she had the ability to open or close the store and direct the work of others. (DPFOF ¶ 32) By contrast, Mr. Kurta was a non-management, part-time sales clerk who worked, on average, just 2-3 days a week and no more than 5-and-a-half hours on the days he did work. (*Id*. ¶ 34) Because he was non-management, he could not be in the store alone or open or close the store. Moreover, it should be noted that—not only did Mr. Kurta hold a different position than Ms. Zych—his

24

personnel records maintained by AutoZone do not contain any lifting restrictions and Mr. Kurta cannot say with any certainty how much weight he was able or unable to lift. (*Id.* ¶ 35) Indeed, Mr. Kurta testified that could not recall ever requesting an accommodation from AutoZone. (*Id.*) Given these uncontroverted facts, nothing about Mr. Kurta's situation raises a question regarding the essential nature of lifting heavy items for individuals working *as a PSM*—the job Ms. Zych held at the time her employment was terminated.

        c.    **Ms. Zych's testimony regarding her understanding of the medical restrictions imposed by her physician does not save the EEOC's Claims.**

Based upon her deposition testimony, Defendants anticipate that the EEOC may argue that Ms. Zych could meet the lifting requirements for the PSM position she held by using her non-injured left arm with her injured right arm to assist. Indeed, Ms. Zych testified that she understood the "15# Max Lift" restriction to only limit what she could lift with her injured right arm and not both arms—this testimony being the first AutoZone had learned of such a belief. Despite weighing just 115 pounds, Ms. Zych also testified that she was able to lift certain items carried at the Cudahy store with her non-dominant left hand. Any such argument from the EEOC would be unavailing for at least two reasons.

First, it is uncontroverted that the release issued by Dr. Shovers on June 18, 2009, unambiguously limits Ms. Zych to "15# Max Lift." (DPFOF ¶ 120) Nowhere in Dr. Shovers' medical documentation is that restriction limited to one arm. (*Id.* ¶¶ 120-121) Nor is there any evidence in the record of any medical documentation issued between June 18, 2009, and Ms. Zych's July 13, 2009, termination by Dr. Shovers or any other medical professional that stated Ms. Zych could use her left arm to lift more than 15 pounds. Given these undisputed facts, AutoZone was entitled to rely upon the straightforward, unambiguous medical documentation

from Dr. Shovers on June 18, 2009, that stated Ms. Zych had a permanent "15# Max Lift" restriction. That Ms. Zych had an understanding that contradicted her medical documentation is of no moment, and AutoZone was under no obligation to somehow divine whether Ms. Zych's restriction was anything other than the unambiguous restriction provided by her own physician. *See Steffs v. Stepan Co*., 144 F.3d 1070, 1072 (7th Cir. 1998) (employer could not be faulted for following restrictions provided by plaintiff's physician when both plaintiff and plaintiff's physician failed to clarify the provided restrictions or inform the employer that different restrictions were needed); *Alexander v. Northland Inn*, 321 F.3d 732, 727 (8th Cir. 2003) ("Alexander first argues she could perform the [vacuuming] function without accommodation because she could in fact do the required vacuuming, as she had many months prior to February 1999. But Northland was entitled to rely and act upon the written advice from Alexander's physician that unambiguously and permanently restricted her from vacuuming. In this situation, the employee's belief or opinion that she can do the function is simply irrelevant."); *Young v. United Parcel Serv., Inc*., 2011 WL 3510997 (D. Md. Aug. 9, 2011) ("There is no case supporting the notion that an employer must question a medical provider's judgment and independently divine whether an employee is truly able to work. Nor was UPS required to let Young work merely because she insisted she was able to.") (*citing Alexander*); *Lopez v. Tyler Refrigerator Corp*., 1999 WL 261899 (N.D. Tex. 1999) (plaintiff's argument that he could provide a self-accommodation by using his left extremity in place of his right when necessary was unavailing because plaintiff's medical restriction permanently restricted plaintiff from lifting over 25 pounds and even if plaintiff could lift more than that using his non-restricted arm, employer was not required to provide accommodation that violates provided medical release).

26

The reasonableness of AutoZone's contention that the plain language of Dr. Shovers' June 18, 2009, permanent 15-pound restriction barred Ms. Zych from any lifting in excess of 15 pounds is further underscored by the pattern of releases issued by Dr. Shovers subsequent to her initial work injury, which in accordance with Dr. Shovers' "custom, habit and practice" would list a particular arm if that was where a restriction was limited. (DPFOF ¶ 123) As Dr. Shovers testified, his June 18, 2009, restriction was meant to give AutoZone a realistic description of what Ms. Zych could do on a daily basis—i.e., lift no more than 15 pounds, which, as Dr. Shovers noted, was not up to her job demands. (DPFOF ¶¶ 121, 124)

Second, even assuming, *arguendo*, that Dr. Shovers' restriction did not bar Ms. Zych from lifting with her non-dominant left arm, the evidence in the record nevertheless confirms that she could not perform the heavy lifting required for the PSM position. Ms. Zych concedes that even using her left arm she lacked the ability to lift a variety of heavy items weighing more than 15 pounds that were present in the Cudahy store during the time she was a PSM, including a gear box, a box of oil, steering gears, and totes weighing more than 15 pounds. (DPFOF ¶¶ 85-91) The record also establishes that during the time she was a PSM the Cudahy store stocked and maintained many other items weighing far in excess of the items, such as the 15-pound tote, that Ms. Zych conceded that she could not lift after her injury. (*Id*. ¶¶ 19-22) For example, in 2009 the store carried a battery weighing 52.7 pounds and a brake rotor weighing 52.7 pounds. (*Id*. ¶ 22) In fact, the store carried hundreds of parts for sale that weighed over 15 pounds. (*Id*. ¶ 21) Ms. Zych was required and expected to be able to lift the majority of those parts, yet many weighed beyond what she testified she could lift. (*See id*. ¶¶ 85-91) Finally, PSMs were required to lift items brought into the Cudahy store by customers. The Company has *no* policy limiting

27

the weight of items customers can bring into its stores for assistance, and it was not uncommon for those items to weigh in excess of 40-50 pounds. (*Id.* ¶¶ 44-47)

In short, the uncontroverted facts confirm that it was reasonable for AutoZone to deem Ms. Zych subject to a permanent 15-pound lifting restriction for both arms. Further, even when using the EEOC's revisionist restrictions, Ms. Zych's own testimony confirms that she still lacked the ability to do the heavy lifting necessary to fully perform the essential functions of the PSM job she held and hence, as a matter of law, her ADA claims fail. [9]

> **d.** **Ms. Zych's performance reviews and the potential congeniality of her coworkers are inapposite to whether she is a "qualified individual" and whether her proposed accommodation is reasonable**

The EEOC may attempt to satisfy its burden of proving that Ms. Zych was a "qualified individual" by offering evidence of performance evaluations predating her permanent lifting restriction and of the positive opinions of her former co-workers. Yet these things are inapposite to the analysis. Any performance review Ms. Zych received while on light duty only speaks to how Ms. Zych was performing the temporary light-duty work assigned to her, not to her ability to perform all the essential job functions of the PSM position. *See*, *e.g*., *Puletasi v. Wills*, 2008 WL 2717146, *18 (9th Cir. July 11, 2008) (holding that plaintiff's proffered evidence of plaintiff's declaration, deposition testimony of plaintiff and plaintiff's supervisor, and plaintiff's positive performance evaluations while on light duty do not refute the fact that plaintiff could not perform all the essential functions of plaintiff's position; rather, "the evidence merely shows that [plaintiff] was effective at performing his *temporary light duty position*.") (emphasis in original).

---

[9] It is worth noting in this regard that in 2009 after her termination from AutoZone, Ms. Zych applied for a position at another auto parts retailer, Advance Auto Parts. The store manager at Advance Auto Parts told Ms. Zych she was not hired for that position because of concern over her lifting restriction. Ms. Zych stated she thought that decision was "legitimate" because there were aspects of the job she could not do with her restrictions, even with the assistance of items such as a fork lift. (DPFOF ¶¶ 136-37)

28

Similarly, the personal feelings of coworkers do not and indeed cannot govern the analysis. Just as the reticence of coworkers or an employer to accommodate an employee does not change the legal requirement to accommodate an employee in appropriate circumstances or otherwise allow an employer to escape its legal obligations in that regard, so does the inverse corollary hold true: the personal affection for a coworker or the willingness to assist in helping a coworker perform certain job functions does not and indeed cannot govern the analysis of whether a job function is essential or whether an accommodation is reasonable as a matter of law. To hold otherwise is to put employers in the impossible position of considering not only a particular employee's restrictions when determining whether an accommodation is reasonable, but also the personal standing of the employee among his or her peers. Thus, two coworkers holding the same position could face potentially different "reasonable" accommodations based on their personal standing among peers. The law does not require this. The personal opinions of Ms. Zych's front-line coworkers do not and cannot govern the analysis, and those opinions do not change the essential job functions of the PSM position as reflected by the realities of the position and AutoZone's documentation.[10]

For the foregoing reasons, Defendants respectfully submit that the Court reject the EEOC's termination claim and grant Defendants judgment as a matter of law as to that claim.

**B.    AUTOZONE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM BECAUSE MS. ZYCH WAS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE ADA**

Because the EEOC cannot establish that Ms. Zych is a qualified individual, *see* discussion in Section V.A, *supra*, the EEOC's reasonable accommodation claim also fails, as

---

[10] It bears mentioning that almost every one of Ms. Zych's co-employees has left the employ of AutoZone, the reality of the typical dynamic retail workforce. (*See* DPFOF ¶ 77) Hence, had Ms. Zych not been let go, she would have been working with a wholly different group of individuals, some or all of whom may not be so willing to do her heavy lifting. This is yet another reason why her former co-workers' congeniality toward her should not be considered in the reasonable accommodation analysis.

29

establishing that Ms. Zych is a "qualified individual" is a prerequisite to any such claim. *See Majors*, 714 F.3d 535 ("An ADA plaintiff can establish discrimination by showing the employer failed to accommodate the employee, but she first must establish that she is a qualified individual with a disability.") (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)).

Moreover, any argument by Plaintiff that AutoZone violated the ADA by allegedly refusing to engage in the interactive process is unavailing, as that alleged refusal fails to constitute a violation of the ADA. As the Seventh Circuit recently stated in *Majors*:

> Ms. Majors further argues that the process to determine whether a reasonable accommodation existed was not interactive, that GE flatly rejected her proposed accommodation [of having another employee assist her in lifting objects over 20 pounds] and didn't suggest a counter-proposal, and that GE didn't consider the use of lifting devices as an accommodation. An interactive process between the employer and the employee is meant "to determine the appropriate accommodation for a qualified individual with a disability." *Jackson v. City of Chicago,* 414 F.3d 806, 813 (7th Cir.2005) (citing 29 C.F.R. § 1630.2(o)(3)). This record wouldn't allow a finding that Ms. Majors was a qualified individual, *so whether the discussion between GE and Ms. Majors was sufficiently interactive is immaterial.*

*Majors*, 714 F.3d at 535 (emphasis added). As Plaintiff cannot show that Ms. Zych was a qualified individual with a disability, the extent to which AutoZone allegedly did or did not engage in the interactive process is immaterial. *See id.*

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit there is no genuine issue as to any material fact and the uncontroverted evidence in the record entitles Defendants to judgment as matter of law as to all. Accordingly, Defendants request that this Court grant the instant Motion for Summary Judgment and judgment for Defendants as to all of Plaintiff's claims.

Respectfully submitted this 8th day of January, 2014.

GONZALEZ SAGGIO & HARLAN, LLP

By:_____/s Emery K. Harlan_____
       Emery K. Harlan
       State Bar No. 1000240
       Matthew J. Feery
       State Bar No. 1066354
       Gonzalez Saggio & Harlan, LLP
       111 E. Wisconsin Avenue, #1000
       Milwaukee, WI 53202
       Phone: 414-277-8500
       Fax: 414-277-8521
       E-mail:  Emery_Harlan@gshllp.com
       E-mail:  matthew_feery@gshllp.com
       *Attorneys for Defendant*