UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AUTOZONE, INC., and ) <br> AUTOZONERS, LLC. ) <br> Defendants. ) <br> _____) | Civil Action No: 2:12-cv-303 |

### PLAINTIFF EEOC'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

AutoZone claims EEOC's case does not have a "reasonable prospect of prevailing before a reasonable jury" ("Memorandum of Law of Defendants AutoZone, Inc. and AutoZoners, LLC In Support of Motion for Summary Judgment" ("Defendants' Brief") at 5). To the contrary, there is no admissible evidence to dispute the central fact in EEOC's case: that Margaret Zych could and did perform the *essential* functions of her job as a member of the team at AutoZone, with or without reasonable accommodation.

In a brief replete with abundant citations to case law and carefully-chosen excerpts of depositions, AutoZone has failed to rebut the central facts: documented history and normal business practice leave no question that Margaret Zych was qualified, by virtue of her experience, training, and physical ability, to perform the essential functions of her job as a PSM. Nothing can change this reality, including efforts to make the job of a PSM sound impossibly strenuous; suppositions from people at AutoZone headquarters about what the job might be like

1

out in the field; and speculation (unsupported by actual weight measurements or other admissible facts) about the "heaviness" of certain parts in the store – without proof of actual frequency of lifting or other admissible evidence of what is essential. AutoZone argues, in substance, that its headquarters' speculative and inadmissible guess as to essential functions should defeat the facts of the job, and thereby defeat its statutory duty to act reasonably in regard to disability and accommodation.

AutoZone makes this argument by sidestepping its lack of proof on the issue of essential functions with an unrelated argument – also unsupported in the facts – that it was difficult for other workers to help Ms. Zych. This is untrue, because there is no evidence of any resistance, let alone complaints, from any coworkers at any time; but also irrelevant because there is no evidence from any source that coworker lifting played any part in the decision to terminate Ms. Zych. This argument is actually the "undue hardship" defense in the wrong place, raised in the context of essential functions when it would instead be the defendants' burden to prove undue hardship as an affirmative defense – which it did not raise in its motion. Nor does the cognate argument that customers were disadvantaged create a basis for undue hardship. Again, store management denied that teamwork-related customer waiting was either unusual in the normal course of business or a performance issue for Ms. Zych – who got stellar reviews; and AutoZone has not claimed the undue hardship defense as part of its motion. AutoZone cannot divert attention from the essential functions issue, and this approach is wrong as a matter of law: the ADA asks about essential functions without considering the difficulty of accommodation – that is an affirmative defense, which AutoZone has not raised in its motion.

2

AutoZone secondly tries to argue that the need for accommodation itself – routine help from regularly-scheduled coworkers with lifting heavy parts – amounts to an admission that lifting heavy parts is an essential function. This also is wrong as a matter of law because accommodation is a flexible process of helping a person with a disability to do the essential functions of the job, subject to undue hardship or direct threat. The need for accommodation is not, as AutoZone argues, a legal wall that stops the employee from continuing in the job and insulates the employer from having to make changes. Again, the essential function issue is preliminary, and accommodation follows as reasonably necessary, subject to the unraised affirmative defenses.

AutoZone is midguided not only in its lack of evidence on essential functions and its unraised defense strategy, but also in its lack of admissible evidence, based on anyone's personal knowledge, that Zych should have been fired. That judgment literally was not made by *anyone*, according to AutoZone's witnesses. Instead, the AutoZone departments involved in HR and Workers' Compensation, but not actual individuals in those departments, simply ordered the termination without pausing to consider the law they knew should be applied.

AutoZone would make it the law that no person with a disability in regard to lifting could ever work at a job where lifting of heavy items was even the smallest part of the job; even where the published work rules demand that one should get help when lifting heavy objects; and even after the person with the disability actually did the job successfully with the accommodation. This argument ignores the facts and the law, and should be rejected.[1]

## FACTS

---

[1] Conversely, EEOC is entitled to summary judgment, as set forth in its own motion.

Zych was able to do her job as a PSM after her injury. SF[2] 18, 20, 28, 29, 33, 34, 35, 38, 62, 63, 70, 72; RF[3] 51, 52, 55, 65, 85-91. The amount of heavy lifting for each employee helping customers was small – about five lifts per shift over 15 pounds, with only one or two requiring two hands. SF 64, RF 45. Zych was always able to work Truck Days. SF 20. The process was organized, and everyone on the team knew what they had to do. RF 71. Zych's other team members had no objections to helping her lift. RF 85.

## DISCUSSION[4]

**A. Zych Was Qualified for the Job and AutoZone Lacks Evidence to Dispute That.**

**1. It was not an Essential Job Function for Zych to Lift More than She Could.**

Zych could do all the lifting that was essential to the job. Calling something essential does not make it so. Rather, what matters is the job as actually practiced. *Miller v. Illinois Dep't. of Trans.*, 643 F. 3d 190, 199-200 (7th Cir. 2011). AutoZone, in its abundance of case citations, somehow missed *Miller*, which controls and cannot be avoided. Where others on the team do the function at issue, it is not an essential function for all team members. *Miller*, *supra*, at 199-200:

> What sets this case apart from those earlier cases is Miller's evidence that it was in fact the normal course for individual members of the bridge crew to substitute and reassign tasks among themselves according to individual abilities, preferences, and limitations. Miller's request for reasonable accommodation did not ask IDOT to do anything it was not already doing (or, at least, anything it had not been doing up until March 2006).

---

[2] "SF" refers to paragraphs in "EEOC's Statement of Undisputed Material Facts," Docket No. 95.
[3] "RF" refers to the "RESPONSE" paragraphs in "EEOC's Response to Defendants' Statement of Proposed Material Facts," filed herewith.
[4] Captions are outlined to conform to those in the "Analysis" portion of AutoZone's "Memorandum of Law Of Defendants AutoZone, Inc. and AutoZoners, LLC In Support of Motion for Summary Judgment" ("Defendants' Brief"), pp. 6-30.

4

The applicable regulations recognize this reality. As noted in the ADA regulations definitions section, 29 C.F.R. §1630.2(n):

> (n) *Essential functions*—
>
> (1) *In general.* The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
>
> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
>
> (3) Evidence of whether a particular function is essential includes, but is not limited to:
>
> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

When confronted with this proof requirement, AutoZone tries to avoid the undisputed

5

facts and attempts to build a record without admissible evidence.

AutoZone has conceded most of the criteria for deciding if a function is essential. As noted, the regulations state (emphasis added):

> § 1630.2    Definitions.
>
> (n) *Essential functions*—
>
> (1) *In general.* The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
>
> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the **reason the position exists is to perform that function;**
>
> (ii) The function may be essential because of the **limited number of employees available among whom the performance of that job function can be distributed**; and/or
>
> (iii) The function may be **highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function**.

AutoZone has not argued that the reason the position of PSM exists is for heavy lifting; that the number of employees is too limited; or that the lifting is a highly specialized function. These elements of an essential function are not established in the record, nor could they be. The reason the PSM job exists is to help sell car parts; there is always a team of employees at the store; and PSMs are not added to the staff based on their highly specialized heavy lifting ability.

AutoZone likewise makes no argument regarding three other criteria in 29 C.F.R. §1630.2(n)(3) (emphasis added):

6

(3) Evidence of whether a particular function is essential includes, but is not limited to:

\* \* \*

(iii) **The amount of time spent on the job performing the function**;

(iv) **The consequences of not requiring the incumbent to perform the function**;

(v) **The terms of a collective bargaining agreement**[.]

AutoZone offers no admissible evidence regarding the time spent on heavy lifting, apart from vague references to such lifting as "regular." On the contrary, the undisputed evidence is that heavy lifting was sporadic and occasional. SF 64, RF 45, 51, 71, 73. Nor is there any evidence that the consequences of not requiring Ms. Zych to lift a heavy part are negative; to the contrary, some other regularly-scheduled employee is there to help her lift. SF 34, 35, 38; RF 85. And there is no collective bargaining agreement, but instead an employee manual that directs employees to get help with lifting. SF 33.

### a. AutoZone's Argument on Day-to-Day Experience Fails to Address the Salient Facts

AutoZone first approaches the essential function issue by purporting to focus on the "day-to-day experience and realities" of the PSM position (Defendants' Brief, 9-12). But AutoZone fails to address the relevant, undisputed evidence regarding essential functions, and fails to offer its own admissible evidence of the type that would support a trial for AutoZone on that issue – much less provide a basis for AutoZone to get summary judgment.

The day-to-day experience and realities of the store were that Zych and another employee with the use of only one arm both were effective in their jobs – Zych as a PSM or "gray shirt" manager; and Barry Kurta as a "red shirt" non-management employee. SF 17, 59. The

7

experience of these two actual employees was that they could do good work if others helped with some lifting. The experience was also that their shifts should be scheduled so they were not the only two on duty at the same time, so customers would not have to wait or come back for a heavy part. SF 62, RF 115. And their experience was that they got praise from their supervisors for a job well done. SF 61, 72.

AutoZone does not address this successful work history, but under *Miller* and the regulations, it is the biggest single fact that makes a trial unnecessary and summary judgment proper only in favor of EEOC. AutoZone appears not to have known about the actual work going on, and now wants to present a revised work world where heavy lifting is done all the time, by every employee on his or her own, and where Zych and Kurta literally could not last even a day, let alone the many years they did.

The regulation looks to "[t]he work experience of past incumbents in the job; and/or . . . [t]he current work experience of incumbents in similar jobs." 29 C.F.R. 1630.2 (n)(3) (vi) and (vii). This does not *exclude* the experience of the person claiming ADA protection or her successful coworker with a similar impairment. But AutoZone's argument amounts to precisely that. And AutoZone similarly ignores the fact that no coworker of Ms. Zych's ever objected to her need for occasional lifting help. *See*, RF 85, 138. This experience, of both past and present incumbents, is conclusive and undisputed, and cannot be swept aside as AutoZone tries to do.

As for the evidence AutoZone does cite, it does not help its position. Defendants' Brief at page 10 asserts that lifting over 15 pounds was necessary in the following areas: going up and down a ladder to retrieve heavy parts; receiving heavy parts from customers; parts testing and installation; and assisting customers with carrying purchased parts. But there is no proof that

8

Case 2:12-cv-00303-WEC    Filed 02/07/14    Page 8 of 17    Document 112

these are other than marginal functions. See, RF 42-45, 48-51. The number of these transactions is not established by AutoZone, despite the clear inference that it knows the numbers. Instead, it makes vague, open-ended statements such as "consistent," "regular," and "daily" (Defendants' Brief, 9) to mask this lack of proof. To the contrary, the undisputed evidence is that an employee on the team, in a normal day of customer service, was likely to be called on to lift a heavy part about once or twice. SF 74; RF 45 (Morales Dep. Tr. 367-371). Nor did truck day mean heavy lifting for everyone. RF 71-72. And installing and testing were marginal, including batteries (RF 25, 55 (Maldonado Dep. Tr. 150-151), 59) and alternators (RF 48-50). AutoZone has not met the requirements, clearly set forth in the regulations, to prove that heavy lifting was "essential."[5]

### b. AutoZone's Argument on the Employer's Judgment Ignores It

Second, AutoZone argues that its "business judgment, as also reflected in the Job Analysis for the PSM position," makes lifting outside her ability an essential function of Ms. Zych's position (Defendant's Brief, 12-14). But the evidence on this subject is again contrary to AutoZone's position, and is ignored. The employer's judgment was in fact provided by Messrs. Diaz and Morales, both of whom considered Zych a fully capable employee despite her impairment and restriction. SF 35, 38, 65, 70. AutoZone thus *contradicts* the employer's judgment as to Zych's ability to perform the essential functions, as made by its most qualified representatives: managers who were actually there to observe the "day-to-day experience and

---

[5] Other elements of AutoZone's argument deserve brief comment. The implied assertion a page 10 of Defendants' Brief that customers who brought parts to the store often needed help in carrying them, besides lacking specifics as to frequency, is not credible on its face: customers bringing in parts presumably got them to the store without help. Nor is there evidence to support the implied assertion that customers were ordinarily less able to carry parts than the AutoZone staff. Finally, pages 11-12 of Defendants' Brief talks about planograms and stocking, neither of which required everyone to do heavy lifting. To the contrary, as noted above, the stocking included lighter work on the sales floor, and planograms of heavy parts were a "very rare" occurrence, "maybe once a year." See, RF 71-73.

9

realities." These managers both thought it unnecessary to fire Zych, and had no problems getting the lifting done while both Zych and Kurta worked for them.

Besides going against the relevant facts, AutoZone fails to introduce any admissible evidence to support its "business judgment" argument. Its proposed facts include, at ¶27, a statement that AutoZone's "assessment" and "business judgment" are that all PSMs need to be able to lift and handle all the merchandise stocked in the stores. This fact is not cited in AutoZone's Brief, perhaps because of the inadmissibility of the assertion under Fed. R. Evid. 602:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has person knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

As noted in RF 27, such a statement is not based on personal knowledge or any other admissible evidence.

In regard to the Job Assessment documents, there are two: Exhibit 14, with arm requirements (provided to EEOC as part of Ms. Zych's charge, *see* SF 30), and Exhibit 15, without arm requirements (provided previously to Ms. Zych's medical providers while she was being treated, *see* SF 31-32). *See also*, RF 53, 54. AutoZone's designated Rule 30(b)(6) witness, Mr. Beussink, testified that Exhibit 15, the one without the arm requirements, is the one from the HR department; while Exhibit 14, the one with the arm requirements, was found only in a "legal database." *Id.*, RF 53. Mr. Young, as another of AutoZone's Rule 30(b)(6) designees, said his department in 2013 was just in the process of drafting job descriptions, and that he could not recall having looked up the PSM job description. RF 27. In summary, AutoZone has no basis to assert that the arm requirements support its argument that they are essential functions.

10

Nor does AutoZone introduce any other evidence that supports its thesis that all employees must lift all things. This assertion is untrue on its face, as employee after employee has said some parts are heavy, and they need help with them. Such is the normal course of business at AutoZone. There is no evidence in the record to support the so-called essential function of heavy lifting for all PSMs: no specific large number of lifts per PSM per shift; no specific large percentage of the assigned work day that is devoted to heavy lifting; no proof that team members did not share and divide the heavy lifting; and no proof that AutoZone's business required one employee to work the store, ever. The record, to the contrary, is clear: the job does *not* require working alone; does *not* require solo lifting of heavy parts; does *not* require you to lift without lifting devices; and does *not* require that you have the strength of a strong man in order to succeed.

Regarding the applicable law, AutoZone again lacks support. The case cited by AutoZone in this section of its argument is actually useful as a contrast to the facts in this case and in *Miller*, *supra*. The decision of the district court in *Grimes v. Union Planters Bank, N.A.*, 2004 WL 2378841 (S.D. Ind. Aug. 30, 2004) does not establish that the experience and judgment of supervisors, supporting the claimant, is overruled by some other judgment at the employer. To the contrary, the *Grimes* case involved no supervisory support for the claimant and a comprehensive study that had determined the essential functions of the "mail clerk 1" position included repetitive bending, twisting, and lifting. *Id*. at *16. None of these circumstances matches this case, where there is full supervisory support and no study, comprehensive or otherwise. The case is further unlike this one in that there were apparently no other incumbents in the job, and no regularly assigned coworker with the same job duties as Grimes. *Id*. at *17.

11

AutoZone cites a few other cases elsewhere in its brief that relate to its essential function argument. *Basith v. Cook County*, 241 F. 3d 919 (7th Cir. 2001) (defendants' brief at 7, 8) is a pre-*Miller* case that involved a question whether pushing a cart to deliver hospital supplies was an essential function for a pharmacy technician. The Court found there was no real dispute in part because the claimant *agreed* it was a 45-minute to an hour part of his workday. *Basith*, 241 F. 3d at 928-929. There is also no discussion to indicate that the delivery was a team function. And AutoZone cites two 8th Circuit airline cases, *Moritz v. Frontier Airlines, Inc.*, 147 F. 3d 784 (8th Cir. 1998) and *Summerville v. Trans World Airlines, Inc.*, 219 F. 3d 855 (8th Cir. 2000) (defendants' brief at 10), both involving gate agent duties for moving passengers on and off planes, in a business where the function at issue – moving passengers – was what the company was there for. These cases are all distinguishable and present no reasonable parallel to the job of selling car parts in a team-operated retail store.

In the end, even after limiting its "essential" argument to the issues of employer judgment and incumbent experience, AutoZone has no issue of fact or law adequate to give it a trial on the issue.

>   **2.    The Accommodation Was Not "Proposed," It Was Normal Practice, and AutoZone's "Reallocation" Argument is Wrong Under the Applicable Law.**
>
>   **a.    This is not a case of "occasional help" for essential functions.**

AutoZone's next argument is an attempt to make this case fit others that generally predate *Miller* and restate the rule that task reassignments within a job may be unreasonable where the reassigned task is an essential function of the job. *See*, *Miller*, 643 F. 3d at 199. In fact, two of the 7th Circuit cases cited by AutoZone at pages 14-15 of its brief are directly distinguished in

12

*Miller*: *Peters v. City of Mauston*, 311 F. 3d 835, 840 (7th Cir. 2002) and *Cochrum v. Old Ben Coal Co.*, 102 F. 3d 908, 912 (7th Cir. 1996). *Miller*, 643 F. 3d at 199. The same analysis applies here, because those cases involved functions truly essential to the jobs, and hiring another person was deemed unreasonable. *Id*. But the *Miller* analysis is not noted or distinguished by AutoZone.

    The record here matches *Miller'*s:

> To the contrary, the record confirms that it was a regular occurrence for individuals on the bridge team to share and swap tasks according to their individual capacities, abilities, and limitations. Miller's request that task assignments be adjusted among the bridge crew members so that he would not be confronted with a task requiring him to work above 25 feet in an exposed or extreme position did not amount to a request that another member of the team perform an essential, non-delegable task.

*Miller*, 643 F. 3d at 200.

    Nothing about the teamwork at AutoZone is different from that in *Miller*. In fact, AutoZone had the "share and swap" system so fully in place that requests from one employee to another for lifting help were the normal course. *Miller* controls, and AutoZone cannot sidestep it.

    Two other cases cited by AutoZone are quickly dealt with: *Dey v. Milwaukee Forge*, 957 F. Supp. 1043 (E.D. Wis.1996) and *Majors v. General Electric Co.*, 714 F. 3d 527 (7th Cir. 2013). In *Dey*, the court was dealing with a claimant who admitted his accommodation of no bending would take him off of 50% of the essential functions of his machine shop position. *Dey*, 957 F. Supp. at 1051-1052. And in *Majors*, the only case cited by AutoZone that is after *Miller*, the lifting involved was an essential function of the purchased material auditor position: moving materials in the audit process was part of the job, and asking a material handler to lift the heavy objects was deemed unreasonable. *Majors*, 714 F. 3d at 534. But there was no teamwork in the *Majors* workplace, as noted by the Court when it distinguished *Miller*:

13

> Circumstances might exist when employees working in teams are able to share duties among themselves, so that such sharing might be a form of reasonable accommodation.

*Majors*, 714 F. 3d at 534, n, 3, *citing Miller*, *supra*, 643 F. 3d 190, 199-200. Those circumstances do exist at AutoZone, and AutoZone should not have ignored them.

### b.   The customer service argument is not relevant.

AutoZone's other argument against the accommodation of Zych under part 2 of its brief (at pages 17-18) is that her lifting restriction caused problems for customers which AutoZone should not be "burdened with." This is based on the testimony of Mr. Kurta, RF 117-119, but as noted above, the issue there was resolved promptly by scheduling Mr. Kurta and Ms. Zych separately. See, RF 115, 117. Both continued their careers to great reviews. SF 61, 72. This argument, besides lacking relevance or factual support, illustrates a hardness of position not in keeping with a post-ADA workplace.

### 3.   AutoZone's Other Attacks on Zych's Qualifications are Meritless.

At pages 18-29 of its brief, this hardness of position is in full display as AutoZone attacks Zych's case as follows: (1) it "infringes upon AutoZone's exercise of its business judgment" to call heavy lifting non-essential (19-20); (2) AutoZone should not be "penalized" for once accommodating Ms. Zych and Mr. Kurta (20-25); (3) Zych's medical restriction should be an unchanging limit on AutoZone's obligation to Zych (25-28); and (4) "Ms. Zych's performance reviews and the potential congeniality of her coworkers" are irrelevant (28-29). These arguments all ignore the undisputed facts and the law.

With regard to the first of these, the argument against so-called infringement of business judgment, Autozone has not provided the required proof of essential functions under the

14

Case 2:12-cv-00303-WEC   Filed 02/07/14   Page 14 of 17   Document 112

regulations. What it calls business judgment is a rejection of the evidence, including the judgment of its managers and the experience of its staff.

With regard to the second, the idea that AuoZone is being penalized by being required to follow the ADA, this is AutoZone's most direct attack on the very idea of the ADA. AutoZone asserts it went beyond the ADA in allowing Zych and Kurta to work there. But this is merely an effort, after the fact, to explain away the normal business practice in the store: people with limited lifting ability were productive employees. This argument, moreover, illustrates the lack of credibility in firing Ms. Zych only after she had the permanent restriction. AutoZone says it was justified because it was not required to create a permanent light duty position; but it fails to acknowledge that Mr. Kurta, without such a position, was doing fine on the job.[6]

With regard to the third of these arguments, AutoZone, despite having voluminous information on Ms. Zych's condition, ignored its ADA obligation and never engaged in any interactive process with her. *See*, 29 C.F.R. §1630.2 (o)(3):

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

AutoZone should not be heard now to complain that it misunderstood what Ms. Zych's actual abilities were. AutoZone here, in roundabout fashion, admits that it fired Ms. Zych too hastily. That is true, but the fault is not with Ms. Zych.

Regarding the fourth argument, AutoZone ignores the uncontradicted proof that Zych performed successfully with her restriction. Rather than acknowledge the facts, AutoZone writes

---

[6] AutoZone admits Mr. Kurta had not requested accommodation. See, RF 35.

them off. But the ability to continue good job performance, despite disability, is the simplest description of what the ADA is all about.

### B. AutoZone Should Have Accommodated Ms. Zych, but Failed.

AutoZone wraps up its attack on Ms. Zych by anticipating that lack of interactive process (argument 3 in the prior section) was an issue. Defendants' Brief, 29-30. AutoZone's only answer to this clear reality is to again say that Ms. Zych was not qualified, i.e., her failure to lift the heaviest items by herself was a disqualifier. Better, AutoZone says, to ignore the interactive process altogether than to afford it to Ms. Zych.

### CONCLUSION

AutoZone has not successfully contested the undisputed evidence that Margaret Zych was qualified to perform the essential functions of her job with a reasonable accommodation, and that she successfully did so with the approval of coworkers, customers, and management. For the reasons set forth herein, EEOC respectfully requests that AutoZone's Motion for Summary Judgment be denied in its entirety.

Dated this 7th day of February, 2014

s/Brian C. Tyndall
BRIAN C. TYNDALL
Senior Trial Attorney

s/Jean P. Kamp
JEAN P. KAMP
Associate Regional Attorney
EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
310 W. Wisconsin Avenue
Suite #800
Milwaukee, WI 53203-2292
Phone  (414) 297-1130
Fax    (414) 297-3146
TDD    (414) 297-1115
email  brian.tyndall@eeoc.gov

16

## CERTIFICATE OF SERVICE

I, Anne Louise Samson, certify that on February 7, 2014, I served the foregoing document by e-mail addressed to:

> Emery K. Harlan, Esq.
> Matthew J. Feery, Esq.
> Gonzalez, Saggio & Harlan, LLP
> 225 E. Michigan Avenue, 4th Floor
> Milwaukee, Wisconsin 53202
> Phone: 414-277-8500
> Fax: 414-277-8521
> Email: Emery_Harlan@gshllp.com,
> Matthew_Feery@gshllp.com

> s/ *Anne Louise Samson*
> Anne Louise Samson
> Legal Tech