# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

        v.                                Case No. 12-C-303

AUTOZONE, INC., and
AUTOZONERS, LLC,

        Defendants.

---

## DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

## I.  PROCEDURAL BACKGROUND

On August 15, 2012, the plaintiff, United States Equal Employment Opportunity Commission (the "EEOC"), filed an amended complaint under the Americans with Disabilities Act ("ADA") against AutoZone, Inc., and AutoZoners, LLC, (collectively referred to as "AutoZone" for the purpose of this decision and order), seeking to correct allegedly unlawful employment practices on the basis of disability and to provide appropriate relief to Margaret F. Zych ("Zych"), a former AutoZone employee.  The EEOC seeks injunctive relief, economic relief, compensatory damages, and punitive damages.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1345.  All parties have consented to magistrate judge jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).  On January 8, 2014, the EEOC and AutoZone each filed a motion for summary judgment.  The respective motions are now fully briefed and ready for resolution.  For the reasons that follow, the EEOC's motion for partial summary judgment and for other relief will be granted in part and denied in part, and AutoZone's motion for summary judgment will be denied.

## II.  PRELIMINARY MATTERS

Before turning to the facts, the court will address a few preliminary matters.  First, to many of AutoZone's proposed findings of fact, the EEOC responded that such facts were "incomplete" and then added additional facts, including citations to the relevant supporting materials.  This practice is improper.  The place for additional facts was in the EEOC's proposed findings, not in its response to AutoZone's proposed findings.  *See* Civil L.R. 56(b)(2)(B)(ii) (E.D. Wis.).  "An 'incomplete' proposed finding is not refuted by the addition of other facts unless the incomplete proposed finding was misleading as written."  *Pechanach v. M & I Bank*, 2010 U.S. Dist. LEXIS 27749, at *3 (E.D. Wis. Mar. 24, 2010).  As AutoZone correctly points out, the local rules do not allow AutoZone to reply to these improperly asserted additional facts.  *See* Civil L.R. 56(b)(3)(B) (permitting a reply only to "additional facts submitted by the opposing party" pursuant to Civil L.R. 56(b)(2)).  Second, the EEOC's responsive submissions contain citations to proposed findings of fact the EEOC filed in conjunction with its motion for summary judgment.

Nevertheless, the court finds that its decision with respect to AutoZone's motion for summary judgment would not be affected, even if the court were to disregard these improper factual assertions for failure to strictly adhere to the local rules.

## III.  FACTUAL BACKGROUND

In support of their respective motions for summary judgment, the EEOC and AutoZone filed proposed statements of material facts, to which each thereafter responded.  Contemporaneously with its response to the EEOC's proposed findings of fact, AutoZone filed a statement of additional material facts on February 7, 2014.  The EEOC filed a reply to these additional facts on February 26, 2014.  After mining the parties' respective sets of proposed facts and AutoZone's additional facts, the

following appear to this court to be the material undisputed facts in this case (except as otherwise noted).

AutoZone operates a retail store in Cudahy, Wisconsin (the "Cudahy store"), that sells auto parts and accessories. (Defendants' Proposed Findings of Fact [hereinafter "DPFOF"] ¶ 1.) The Cudahy store is generally divided into two parts: the retail section, where customers can roam the floors and select merchandise, and the back of the store, where customers are not allowed and where "hard parts" are stored. The Cudahy store carried and sold, among other items: batteries, brake drums, brake rotors, strut assemblies, bags of ice melt, truck ramps, alternators, jacks, radiators, cases of anti-freeze, hub bearing assemblies, rack and pinion sets, and coil springs. (DPFOF ¶¶ 2-18.) Some of these items weighed more than fifteen pounds, though most did not have any weights listed. (*See* DPFOF ¶¶ 2-23.) The hard parts, which were stored on shelves 10-12 feet high, were not accessible to customers. (DPFOF ¶ 28.) Store employees retrieved these parts via a ladder. (DPFOF ¶ 29.)

Margaret Zych began working for AutoZone at the Cudahy store in June 2005 as a sales associate. (DPFOF ¶ 78.) In January 2006, Zych was promoted to parts sales manager ("PSM") by her district manager, Alfredo Morales ("Morales"). (Plaintiff's Proposed Findings of Fact [hereinafter "PPFOF"] ¶ 17.) During the course of Zych's employment with AutoZone, the Cudahy store did not have any excess staff. (DPFOF ¶ 30.) The store had six or seven total employees, including those who worked only part time. Typically, the store was staffed by only two employees, one of whom had to be either a PSM or a store manager. (DPFOF ¶ 32.) Sometimes employees were late or missed their shift altogether. (DPFOF ¶ 33.) Zych remembers only one instance where an employee did not show up for work and she was left to work the store alone. (Plaintiff's Response to DPFOF [hereinafter "Pl.'s Resp. to DPFOF"] ¶ 33.)

Because of the highly competitive nature of the auto parts retail industry, AutoZone stressed to its employees the importance of customer service. (DPFOF ¶ 36.) For example, employees were expected to retrieve a part a customer was talking about and put that part in the customer's hand. (DPFOF ¶ 41.) PSMs, in particular, were trained on "WOW Customer Service," which included greeting each customer within five seconds of him or her walking into the store, getting the product in the customer's hands and walking the product to the counter, and dropping what they were doing in order to greet a new customer. (DPFOF ¶ 39.) A major focus of the PSM job was to be available to the customer. (DPFOF ¶ 40.)

As part of this customer service emphasis, PSMs at the Cudahy store performed a variety of tasks. PSMs helped customers carry parts to or from the customer's car and lifted items if the customer required assistance. (DPFOF ¶ 42.) Customers also brought parts into the store for a number of reasons, including returns, testing, or buying a replacement part. (DPFOF ¶ 44.) Customers brought in both heavy and light items, some of which weighed more than fifteen pounds. (DPFOF ¶¶ 46-47.) PSMs also stocked parts onto shelves and on the sales floor; received shipments from "hub stores" (i.e., stores that delivered parts that a customer ordered but the Cudahy store did not have in stock); helped put away hard parts during "truck days"; and constructed "planograms" (i.e., the readjusting of an area of merchandise). (DPFOF ¶¶ 65, 69-70, 72-73.) PSMs installed batteries in customer cars and tested batteries and alternators brought into the store by customers. (DPFOF ¶¶ 43, 48.) These activities involved lifting and carrying parts, including some parts that weighed more than fifteen pounds. (DPFOF ¶ 58-63.)

PSMs at the Cudahy store also were responsible for controlling the cash and inventory, delegating opening and closing tasks to non-management employees, resolving customer issues, and

4

authorizing returns. (PPFOF ¶ 18.) But overall, PSMs devoted about 75% of their time to assisting customers with parts. (DPFOF ¶ 68.)

As a result of a collaborative effort, AutoZone created a "Job Analysis" for the PSM position. (DPFOF ¶ 54.) There are two versions of this Job Analysis. (DPFOF ¶ 56; Pl.'s Resp. to DPFOF ¶ 53.) The two versions are nearly identical except one version lists lifting as a physical job requirement: "Lifting from floor to waist – Frequently – 75 pounds maximum, usually 10 to 20 pounds"; "Lifting from waist to overhead – occasionally 15 pounds maximum, usually 5 to 10 pounds"; "Lifting horizontally – Frequently – 25 pounds maximum, usually 10 to 15 pounds." (DPFOF ¶ 53.) It is unknown when these "arm requirements" were added or who added them. (Pl.'s Resp. to DPFOF ¶ 53.) The Job Analysis with the arm requirements was scanned in the legal database, while the Job Analysis that did not mention any arm requirements could be found in a binder within AutoZone's human resources department. The other PSMs who worked in the Cudahy store considered the Job Analysis that contained the arm requirements to be consistent with their experience as a PSM. (DPFOF ¶ 55; Pl.'s Resp. to DPFOF ¶ 55.)

Individuals who interviewed for the PSM position were informed that the job entailed lifting more than fifteen pounds. (DPFOF ¶ 51.) In fact, applicants for all positions were told this information because lifting was "a realistic part of everyday life on the job." (DPFOF ¶ 51.) Lifting these items was not necessarily "a key job requirement" for a PSM, however, as other individuals in the building could always help out. (Pl.'s Resp. to DPFOF ¶ 51.) Nevertheless, there was only one PSM classification, and all PSMs at the Cudahy store were assigned the same job duties. (DPFOF ¶ 52.)

On July 15, 2007, Zych injured her right shoulder while at work. (DPFOF ¶ 79.) She injured her shoulder while standing on a ladder, lifting and putting away a large hub rotor assembly on one

of the store shelves. Zych received treatment for her shoulder injury from Dr. Jeffrey B. Shovers, an orthopedic surgeon. (DPFOF ¶ 95.) Over the following two years, Zych was subject to a series of temporary work restrictions, including restrictions on her lifting. (DPFOF ¶¶ 97-113; Pl.'s Resp. to DPFOF ¶ 24.) Zych was placed on a "work-hardening" program in an attempt to build her up to return on a full-duty basis. (DPFOF ¶ 96.)

During those two years, AutoZone accommodated Zych's temporary restrictions. (DPFOF ¶¶ 96, 114.) Prior to her injury, Zych could lift items in the Cudahy store that weighed more than fifteen pounds. (DPFOF ¶¶ 80-83, 92.) After her injury, Zych could no longer lift a variety of items that were carried in the Cudahy store, and she refrained from lifting heavy parts in order to avoid re-injury. (DPFOF ¶¶ 85-91, 93.) When she needed to lift a heavy part after her injury, Zych would request help from a co-worker, or a co-worker would notice the situation and help without being asked. (DPFOF ¶ 127.) Sometimes customers had to wait for the co-worker's assistance. (DPFOF ¶¶ 118-19.) Zych's role on truck day after her injury primarily consisted of putting up lighter parts, working at the counter, and looking up parts. (DPFOF ¶ 71.) Putting away hard parts on truck day involved a lot of multitasking by all employees who were working that day. (Pl.'s Resp. to DPFOF ¶ 71.)

Throughout her employment at the Cudahy store, AutoZone maintained a store handbook that included, among other things, "Safety and Security Policies." (PPFOF ¶ 33.) One of the tips under the "Proper lifting" section stated: "Ask for help when needed." (PPFOF ¶ 33.) Co-workers Angel Maldonado ("Maldonado") and James A. Garcia ("Garcia") and store manager Robert Diaz ("Diaz") all indicated that they did not personally have any issue with helping Zych lift items in the store. (Pl.'s Resp. to DPFOF ¶ 85.) Diaz further stated that everyone was "there to help out when she

couldn't do certain tasks" and that he did not hear any complaints from other Cudahy store employees about having to help Zych. (Pl.'s Resp. DPFOF ¶ 85.)

Another co-worker, Barry Kurta ("Kurta"), who worked as a part-time sales associate, also had a lifting restriction. (DPFOF ¶¶ 34-35, 116.) After Zych's injury, on at least one occasion, she and Kurta worked together as the only two assigned employees in the store. (DPFOF ¶ 115; Pl.'s Resp. to DPFOF ¶ 115.) According to Kurta, there were "a couple" occasions where customers came into the Cudahy store and requested parts that neither he nor Zych could carry; some of these customers may have complained about having to come back later. Kurta also stated that when he would have to assist Zych with lifting something, at times customers became upset because they were left waiting with no one to assist them. (DPFOF ¶ 117.) Zych spoke with Diaz about the difficulty of her and Kurta working together and, subsequently, they "didn't work like that anymore." (Pl.'s Resp. to DPFOF ¶ 115.) Morales stated that having Zych and Kurta work the same shift was merely a "scheduling problem" that was "relatively easy" to accommodate. (Plaintiff's Reply to the Defendant's Statement of Additional Facts [hereinafter "Pl.'s Reply to DSOAF"] ¶ 75.)

On June 18, 2009, Dr. Shovers assigned Zych a permanent, fifteen-pound lifting restriction, which did not designate any specific arm. (DPFOF ¶¶ 120, 122.) The "primary goal" of the restriction was to give AutoZone "a guideline of what [Zych was] capable of on a daily basis." (DPFOF ¶ 124.) Zych informed Diaz of this restriction, who then forwarded it to AutoZone's regional office. (DPFOF ¶ 125.) AutoZone terminated Zych's employment on July 13, 2009. (DPFOF ¶ 131.) The termination notice stated: "CANNOT ACCOMMODATE PERMANENT RESTRICTION." (PPFOF ¶ 36.) Morales disagreed with the decision to terminate her. (PPFOF ¶ 38.)

Zych filed a "Charge of Discrimination" with the EEOC on September 8, 2009, alleging ADA violations by AutoZone for its failure to provide her with reasonable accommodation and discharging

her on July 13, 2009. (PPFOF ¶ 11.) On her EEOC "Intake Questionnaire," Zych indicated that she continued to do her job with "no problems" for almost one month following her permanent restriction. (DPFOF ¶¶ 61.) The EEOC investigated the charge and, after a finding of reasonable cause, attempted to conciliate the charge with AutoZone. (PPFOF ¶ 12.) After conciliation proved unsuccessful, the EEOC commenced this lawsuit on March 28, 2012. (PPFOF ¶¶ 13-14.)

In 1995, Zych was convicted of a felony. (Defendants' Statement of Additional Facts [hereinafter "DSOAF"] ¶ 1.) The parties dispute whether Zych disclosed this felony conviction to AutoZone. During her deposition, Zych provided equivocal answers when asked if she disclosed this conviction on her job application. (DSOAF ¶ 2.) Zych was interviewed by Glen Combs, who was a regional training manager with AutoZone at the time of the interview. (PPFOF ¶¶ 79-80.) Zych testified that she took paperwork relating to her conviction to her interview, she showed this paperwork to "Glen," and she discussed her conviction with Glen during the interview. (PPFOF ¶ 77.) The parties also dispute whether this felony conviction would have disqualified Zych from being employed by AutoZone. (PPFOF ¶¶ 86-90; DSOAF ¶¶ 3-8.)

## IV. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is entitled to judgment as a matter of law" where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has

the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* A party asserting that a fact is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere "scintilla of evidence" in support of the nonmovant's position is insufficient. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "[I]n the light most favorable . . . simply means that summary judgment is not appropriate if the court must make a choice of inferences." *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)) (internal quotation marks omitted).

## V. DISCUSSION

In its First Amended Complaint, the EEOC asserts that AutoZone discriminated against Zych "by denying her a reasonable accommodation and terminating her employment because of her

disability." (Pl.'s First Am. Compl. 1.)  Currently pending before this court are the EEOC's "Motion for Partial Summary Judgment and for Other Relief" and AutoZone's "Motion for Summary Judgment."  In its motion, the EEOC seeks summary judgment in its favor on the issue of liability for the disability discrimination alleged in the First Amended Complaint.  It also seeks summary judgment in its favor on several of AutoZone's affirmative defenses, including "undue hardship" and "direct threat," conciliation, and after-acquired evidence.  Finally, the EEOC seeks a pretrial ruling that a punitive damages instruction be given to the jury at the trial on the remaining issues (i.e., economic relief, compensatory damages, and injunctive relief).  In its motion, AutoZone seeks summary judgment in its favor as to the entirety of the EEOC's First Amended Complaint.

The ADA prohibits employers from discriminating against employees because of their disability.  42 U.S.C. § 12112(a).  Specifically, the ADA provides that it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  An employer also discriminates against a qualified individual with a disability under the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."  42 U.S.C. § 12112(b)(5)(A).  A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

To prevail on a termination claim under the ADA, the EEOC must demonstrate that Zych (1) is disabled under the statutory definition, (2) is able to perform the essential functions of her job either with or without reasonable accommodation, and (3) suffered an adverse employment action because of her disability.  *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013).  Similarly, "to establish

a prima facie case of failure to accommodate in accordance with the ADA," the EEOC must show that (1) Zych is a qualified individual with a disability, (2) AutoZone was aware of Zych's disability, and (3) AutoZone failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011). "To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of her claim." *Id.* at 748.

Here, one issue is central to each respective motion for summary judgment—namely, whether Zych is a "qualified individual" within the meaning of the ADA. More precisely, the parties vigorously dispute "whether the ability to lift parts in excess of 15 pounds is an essential function of the PSM job at AutoZone." (Pl.'s Reply 1.) Accordingly, the court will address this issue first.

## A. Essential Functions

To be clear, the parties do not seem to dispute that employees at the Cudahy store lifted items weighing more than fifteen pounds. Indeed, this fact is undisputed based on the testimony of several employees who worked at the store during the course of Zych's employment, including Zych herself. Rather, the parties dispute whether lifting more than fifteen pounds is *essential for the PSM position*.

"Essential functions" is a term of art used in the ADA to signify "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Marginal functions of the position are not essential functions. *Id.* The regulations that interpret the ADA specify that a job function "may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." § 1630.2(n)(2)(ii). The regulations further provide examples of evidence that a court may consider when deciding whether a particular job function is essential. Such evidence includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

§ 1630.2(n)(3). These interpretive regulations are not binding criteria, however. As such, "[a] task need not meet each factor on the list to be an 'essential function.'" *Lombardo v. Air Prods. & Chems., Inc.*, 2006 U.S. Dist. LEXIS 46077, at *35 (E.D. Pa. July 7, 2006). Moreover, although courts "look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions," courts "do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." *DePaoli v. Abbot Labs.*, 140 F.3d 668, 674 (7th Cir. 1998).

Put simply, when juxtaposed against the above factors, the undisputed facts do not establish whether lifting items weighing more than fifteen pounds is an essential function for the PSM job at the Cudahy store. Although individuals who interviewed for the PSM position were informed that the job entailed lifting more than fifteen pounds, Morales, the district manager, stated that this information was told to applicants for all positions at the Cudahy store. Further, Morales did not characterize such lifting as "a key job requirement" for the PSM position because another individual in the building could always help out when needed.

The written job descriptions for the PSM position are also inconclusive as to whether lifting is an essential function. It is undisputed that AutoZone maintains at least two different versions of a Job Analysis for the PSM position. One version lists various arm requirements, including lifting

heavy objects, as a physical job requirement. The other version appears identical except that it does not include any arm requirements. It is unknown when these arm requirements were added—or removed—from the Job Analysis. Nevertheless, the Job Analysis that did not list any arm requirements is kept in a binder within AutoZone's human resources department, while the other version is scanned in a legal database.

Furthermore, other PSMs who worked in the Cudahy store stated that the Job Analysis that contained the arm requirements reflected their experience as a PSM, as lifting heavy objects was a regular part of their job. However, this testimony does not establish that lifting items weighing more than fifteen pounds was required of all PSMs at the Cudahy store. Indeed, the day-to-day experience at the store suggests that AutoZone may not have required all PSMs to perform this allegedly essential function. During the two years after Zych suffered her shoulder injury, a co-worker simply helped out whenever Zych needed to lift a heavy part. Likewise, while Zych did not help put away heavy parts during truck days after her injury, these days required multitasking by all employees who were working that day, and Zych then helped perform other tasks.

Finally, the consequences associated with not requiring Zych to lift items that weighed more than fifteen pounds are unsettled as well. The Cudahy store was minimally staffed during the course of Zych's employment with AutoZone, and often only two employees—one of which needed to be either a PSM or a store manager—were working at the store at a given time. Consequently, sometimes customers had to wait for a co-worker to assist Zych with lifting a particular object. Kurta, a co-worker who had a lifting restriction himself, remembers a couple of occasions where customers were told to come back to the store at a different time because he and Zych were the only two employees at the store and neither could lift the requested part. Kurta believes that some of these customers complained to a manager. However, Morales stated that this issue was merely a

"scheduling problem" that was "relatively easy" to accommodate. Moreover, Maldonado, Garcia, and Diaz all indicated that they did not have any issue with helping Zych lift items in the store. Diaz, the store manager, further stated that he did not hear any complaints from other employees about having to help Zych.

In sum, the court finds that a genuine dispute exists as to whether lifting items that weigh more than fifteen pounds is an essential function of the PSM position at the Cudahy store. Because a genuine dispute exists as to whether Zych is a "qualified individual," an essential element of both the EEOC's termination and reasonable accommodation claims—an element on which it has the burden of proof—the EEOC's motion for partial summary judgment on the issue of liability will be denied. In its motion for summary judgment, AutoZone argues only that Zych is not a qualified individual with a disability under the ADA. This argument is entirely based on AutoZone's contention that Zych is unable to perform the essential functions of the PSM position, with or without reasonable accommodation. In other words, AutoZone's motion does not challenge any other elements of the EEOC's claims. Accordingly, because a genuine dispute exists as to whether lifting such items is an essential function of the PSM position at the Cudahy store, AutoZone's motion for summary judgment will be denied as well.

## B. AutoZone's Affirmative Defenses

AutoZone has asserted various affirmative defenses in its amended answer to the EEOC's First Amended Complaint. In its motion for partial summary judgment and for other relief, the EEOC seeks summary judgment in its favor on several of these affirmative defenses, including undue hardship/direct threat, conciliation, and after-acquired evidence.[1]

---

[1] The court notes that each defendant has filed an amended answer to the EEOC's First Amended Complaint. However, the affirmative defenses at issue in the EEOC's motion are identical.

*1. Undue Hardship/Direct Threat*

AutoZone has alleged that "[t]he continued employment of Ms. Zych by [AutoZone] posed a direct threat to the heath and safety of Ms. Zych and her co-workers." (Defs.'s Am. Answer 7.) AutoZone also has alleged that the EEOC's "failure to accommodate claim fails in whole or part because any accommodation to which Zych may believe she was entitled would have imposed an undue hardship" on AutoZone. (Defs.' Am. Answer 7.) The EEOC has moved for summary judgment in its favor on these affirmative defenses.

AutoZone argues that the EEOC's motion for summary judgment as to AutoZone's undue hardship and direct threat affirmative defenses should be summarily denied because the EEOC's arguments are "perfunctory, undeveloped, and unsupported by admissible and probative evidence." (Defs.' Resp. 16.) More precisely, AutoZone maintains that the EEOC merely presented its version of the facts, recited the general standard regarding the undue hardship and direct threat defenses, and concluded that it is entitled to summary judgment on these affirmative defenses. Likewise, AutoZone contends that the EEOC's assertion in its initial brief that it is entitled to summary judgment "on the grounds stated above" fails to provide AutoZone "a meaningful opportunity to respond." (Defs.' Resp. 19.) AutoZone thereafter addresses "the grounds" it believes the EEOC is referring to in its brief. (Defs.' Resp. 19-25.)

The court finds that the EEOC has adequately developed its argument against AutoZone's undue hardship and direct threat defenses. The EEOC accurately recites the statutory provisions within the ADA giving rise to these defenses. (Pl.'s Br. 8-9.) The EEOC then concludes that it is entitled to summary judgment on AutoZone's undue hardship and direct threat defenses. (Pl.'s Br. 9-10.) Later, the EEOC provides the basis for its conclusion. Specifically, the EEOC argues that AutoZone had already been accommodating Zych's lifting restriction in the normal course of its

business. (Pl.'s Br. 17-18.) Citing the testimony of Morales, the district manager in charge of the Cudahy store, the EEOC maintains that "there was no cost or danger associated with this practice." (Pl.'s Br. 18.) The EEOC also states that this accommodation was effective and had worked until AutoZone stopped it for no reason. Moreover, the EEOC contends that AutoZone's own printed materials—namely, its store handbook and training materials—contradict any claim that providing help with heavy lifting posed an undue burden or direct threat on AutoZone. Thus, although brief, the EEOC's arguments with respect to these affirmative defenses are not so "perfunctory" as to warrant summary denial of the EEOC's motion for summary judgment on these issues.

Nevertheless, the EEOC is not entitled to summary judgment relative to AutoZone's undue hardship and direct threat defenses because genuine disputes exist as to certain material facts. For one, while several of Zych's co-workers indicated that they did not personally have any issue with helping her lift items in the store, another co-worker stated that customers were sometimes left waiting or could not be helped because of Zych's inability to lift certain items. Morales testified that this issue was merely a "scheduling problem" that was "relatively easy" to accommodate. However, Zych herself admitted that customers sometimes had to wait for a co-worker to assist her. Thus, a reasonable fact-finder could conclude that accommodating Zych's lifting restriction would impose an undue hardship on AutoZone. *See* 42 U.S.C. § 12112(b)(5)(A). Similarly, a reasonable fact-finder could conclude that Zych posed a direct threat to her own health and safety. *See* 42 U.S.C. § 12113(b). Zych testified that she refrained from lifting heavy parts after her injury in order to avoid re-injury. Accordingly, the EEOC's motion for summary judgment with respect to AutoZone's undue hardship and direct threat affirmative defenses will be denied.

*2. Conciliation*

AutoZone has alleged that "[a]dministrative prerequisites and/or conditions precedent including, but not limited to, the EEOC's duty to conciliate in good faith the claims in this action have not been met or exhausted." (Defs.' Am. Answer 6.) Citing *EEOC v. Mach Mining LLC*, 738 F.3d 171 (7th Cir. 2013), the EEOC argues that the Seventh Circuit has conclusively rejected this so-called "conciliation" defense. AutoZone has not responded to this argument.

The Seventh Circuit recently concluded that "an alleged failure to conciliate is not an affirmative defense to the merits of a discrimination suit." *Mach Mining*, 738 F.3d at 172. Although the *Mach Mining* case involved an employment discrimination claim under Title VII of the Civil Rights Act of 1964, the court finds that its holding and supporting rationale is equally applicable to employment discrimination claims filed under the ADA. Accordingly, the EEOC's motion for summary judgment with respect to AutoZone's conciliation affirmative defense will be granted.

*3. After-acquired Evidence*

AutoZone has alleged that "Zych's remedies are limited, in whole or in part, pursuant to the after-acquired evidence doctrine." (Defs.' Am. Answer 7.) The purported "after-acquired evidence" relates to Zych's felony conviction from 1995. In its "Motion for Leave to File Amended Answers and Affirmative Defenses," AutoZone sought permission to add this after-acquired evidence affirmative defense. (Pl.'s Br. 23.) AutoZone stated, "[t]he after-acquired evidence affirmative defense allows an employer to cut-off back pay liability by demonstrating that the employee's wrongdoing would have necessitated the discharge of the plaintiff." (Pl.'s Br. 23.) In essence, AutoZone maintains that it would not have hired or promoted Zych if it had known of the felony conviction at the time of its employment decisions. (Defs.' Resp. 26.)

In its motion, the EEOC seeks summary judgment in its favor on this affirmative defense. The EEOC argues that summary judgment is proper because the undisputed facts show "that AutoZone *did know* of the conviction, and nonetheless hired her." (Pl.'s Br. 26.) Moreover, the EEOC maintains that AutoZone, which bears the burden of proving its affirmative defense, has not produced sufficient evidence demonstrating that it would have terminated Zych had it learned of the conviction.

"An employer may be found liable for employment discrimination, but if the employer later—typically in discovery—turns up evidence of employee wrongdoing which would have led to the employee's discharge, then the employee's right to back pay is limited to the period before the discovery of this after-acquired evidence." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361 (1995)). "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63.

The court finds that AutoZone has satisfied its initial burden. While Zych provided equivocal answers when asked during her deposition whether she had disclosed her felony conviction on her employment application,[2] she also testified that she showed paperwork relating to her conviction to "Glen" and discussed her conviction with him during her interview. AutoZone does not dispute that Glen Combs interviewed Zych, and Combs does not remember conducting the interview. Nevertheless, AutoZone maintains that Zych could not have disclosed her prior conviction because AutoZone has a policy of not hiring or promoting individuals who have fraud-related convictions. In response to an interrogatory concerning this alleged policy, AutoZone provided the EEOC with the

---

[2] Zych's employment application is not in the record before the court.

names of thirty-seven individuals who were not hired or promoted from January 1, 2009, through December 31, 2011, because of a felony conviction involving fraud. AutoZone need not produce the job applications or any additional details about these convictions in order to satisfy its initial burden. Further, AutoZone stated that from 2009 through 2011, it did not hire or promote a single individual who had a fraud-related conviction appearing on his or her background check. This evidence is sufficient to establish a genuine dispute as to whether AutoZone had knowledge of Zych's felony conviction.

Likewise, AutoZone has produced sufficient evidence to establish a genuine dispute as to whether it would have terminated Zych on those grounds had it known of the felony conviction at the time of its employment decisions. In addition to the evidence outlined above, AutoZone also provided the EEOC with the name of one individual who was terminated upon discovery that she had falsified her employment application by failing to disclose a prior felony conviction. AutoZone also submitted the declaration of Darren Reltherford, an employee relations manager in AutoZone's human resources department, which states that, based on Reltherford's knowledge and experience with AutoZone's practice, AutoZone would have fired Zych upon learning of her prior fraud conviction. This declaration is not directly contradicted by other evidence in the record. Because a genuine dispute exists as to these material facts, AutoZone's after-acquired evidence defense does not fail as a matter of law. Accordingly, the EEOC's motion for summary judgment with respect to AutoZone's after-acquired evidence affirmative defense will be denied.

## C. Punitive Damages Instruction

Finally, the EEOC requests that a punitive damages instruction be given to the jury. In turn, AutoZone argues that this request should be summarily denied because it is "a wholly improper request for relief in a Rule 56 motion for summary judgment." (Defs.' Resp. 29.) Moreover,

AutoZone maintains that a determination regarding the appropriateness of such an instruction must be based on the evidence presented at trial. AutoZone further contends that the EEOC's request is merely an excuse to discuss an Arizona consent decree allegedly binding the same parties involved in the instant case. The EEOC counters, in a footnote within its reply brief, that its request is appropriate at this time because the EEOC's First Amended Complaint contains a claim for punitive damages and AutoZone has raised affirmative defenses to this claim. The EEOC also maintains that it "has moved for partial relief in the form of a ruling that EEOC may, as a matter of law, proceed to the jury with its punitive damages claims." (Pl.'s Reply 3, n.3.)

For one, neither the EEOC's motion nor its brief in support of its motion addresses partial summary judgment in favor of the EEOC on its punitive damages claim or any of AutoZone's affirmative defenses concerning punitive damages. Rather, the EEOC merely requests an instruction on punitive damages, citing only the standard for such an award and why it believes it has met that standard. As such, the EEOC has provided no basis for requesting a punitive damages instruction within the scope of its Rule 56 motion for summary judgment. Furthermore, the court finds that issuing a ruling for this instruction is premature at this point in the proceedings. Accordingly, the EEOC's request for a pretrial ruling that a punitive damages instruction be given to the jury will be denied.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for partial summary judgment and for other relief (ECF No. 94) be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 102) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the court will conduct a scheduling conference with the parties to discuss the further processing of this case to final resolution on **Wednesday, May 7, 2014, at 9:00 a.m.** in Courtroom 242, United States Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.

**SO ORDERED** this 14th day of April 2014, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge