UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　Plaintiff, ) Civil Action No: 2:12-cv-303
　　v. )
　　　　　　　　　　　　　　　　　　 )
AUTOZONE, INC., and )
AUTOZONERS, LLC )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　Defendants. )
_____)

**EEOC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
NEW TRIAL AND OTHER RELIEF**
_____

**I.　　PROCEDURAL BACKGROUND**

　　This case was brought against AutoZone, Inc. and AutoZoners, LLC (together, "AutoZone") by EEOC in the public interest and to seek relief for Margaret Zych. The matter arose when Ms. Zych was fired from her Parts Sales Manager position at AutoZone, the last two years of which involved working successfully with a shoulder impairment. Once her restriction became permanent, AutoZone fired her without any interactive process or any inquiry of her coworkers or supervisors – all of whom verified that she was doing the job without problems, and none of whom had any complaints about her performance or about providing occasional help to her. AutoZone then, after Zych filed an EEOC charge, asserted falsely that it had interacted with her repeatedly in regard to possible accommodation and determined that accommodation was not possible. To the contrary, no such interaction took place. Moreover, AutoZone has not said who made the decision to fire Ms. Zych, and no one has admitted doing so.

　　The case was tried on November 17-21, 2014. To further support Zych's excellent performance despite her impairment, EEOC presented evidence that AutoZone had lost Zych's

personnel file, which would have included her performance reviews – all of which, according to trial testimony, would further prove her success in the position both before and after her impairment. Performance reviews for other employees showed they were rated on helping the "team" succeed. The AutoZone store handbook told all team members to ask for assistance in lifting more than you can carry. Zych and others testified she was able to do the PSM job successfully with her impairment, so long as she complied with her restriction, *i.e.*, did not lift heavy items with her right arm. She testified at trial that the amount of heavy lifting required of her was infrequent, with only two or so lifts in a normal shift requiring assistance, and that assistance was always available in the form of a regularly-scheduled coworker. This was verified by her District Manager, Alfredo Morales, who testified that there were always at least two employees in the store; that customer transactions at the Cudahy store were about 100 per day, split among at least four employees; and that heavy lifts on the ladder requiring more than one hand were limited to about two per person per day. None of this evidence was contradicted by AutoZone, which presented videos of heavy parts but did not specify how often actual heavy lifts were necessary at the store – despite its clear ability to mine its internal data, to show for example how many purchases were made by one of Zych's satisfied store customers, Kenneth Hermersmann.

EEOC had requested that the following clause on essential functions, from Seventh Circuit precedent, be given in addition to the form instruction on "Qualified:"

> **In team working environments, where team members perform tasks according to their capacities and abilities, job functions that are not required of all team members are not essential functions. Where there is no required manner in which employees are to divide the labor, the fact that one team member may not be able to do all the tasks assigned to the team does not mean that person is unable to perform his or her essential duties.**

2

Case 2:12-cv-00303-WEC   Filed 12/19/14   Page 2 of 18   Document 215

EEOC's Proposed Jury Instructions (Supplement), Docket No. 199-1, p. 15, "8. DEFINITION OF "QUALIFIED" (EEOC)," citing *Miller v. Illinois Department of Transportation*, 643 F. 3d 190, 198 (7th Cir. 2011). The Court declined to give this instruction.

The jury instructions as given at trial included the following in regard to essential functions:

> **The amount of time spent on the job performing the function is also a factor used to determine whether a task is an essential function. However, an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential.**

"Jury Instructions," Docket No. 208, p. 13. In giving this instruction, the Court appears to have adopted an addition to the Seventh Circuit form jury instruction on the definition of "Qualified," derived from *Basith v. Cook County*, 241 F. 3d 919, 929 (7th Cir. 2001), as initially suggested by defendants, with slightly different language. *See*, "Defendants' Requested Jury Instruction No. 8 Definition of "Qualified." Docket No. 200-4, p. 10; *see also*, Fed. Civ. Jury Instr. of the 7th Cir., Instr. 4.05, "Definition of 'Qualified'" (2005 rev.). Defendants' requested change, based on a case decided prior to the date of revision of the form jury instruction, was the only addition to the "essential functions" language in the form instruction on "Qualified."

EEOC took exception at trial to the Court's exclusion of its proposed instruction, on the grounds that this case centered on the team working environment and that the Seventh Circuit's decisions, including *Miller* and *Kauffman v. Petersen Healthcare VII, LLC*, 769 F. 3d 958 (7th Cir. 2014), made the additional language necessary for a proper understanding of the law.

The jury instructions as given at trial also included the following in regard to essential functions:

> **A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change**

3

> **of essential job functions, assignment of essential job functions to other employees, or lower productivity standards.**

"Jury Instructions," Docket No. 208, p. 13.

Before the jury returned a verdict, it sent a question to the Court:

> **Can the jury make a statement about its beliefs about the conduct of the parties notwithstanding the verdict?**

Docket No. 210.

The Court advised the jury as follows:

> **Each individual juror may speak to the parties and/or their lawyers, if they wish to do so, after the verdict is returned and the jury is discharged. However, no juror is obligated to do so.**

*Id.*, attachment 1. EEOC did receive a communication from one of the jurors, apparently in response to the Court's advisory. *See*, footnote 2, below.

The jury returned a verdict saying "no" on the first question: whether Margaret Zych was a qualified individual with a disability or a record of disability when she was fired. Docket No. 209.

This motion asks the Court to exercise its sound discretion and order a new trial, in the interests of substantial justice and pursuant to Fed. R. Civ. P. 59 (a) (1) (A), because (1) the jury instructions were in error in regard to the law on essential functions in the team working environment at AutoZone, to the prejudice of EEOC's case; and (2) the manifest weight of the evidence supports the fact that Ms. Zych was able fully to perform the essential functions of the job, including any lifting that actually was required of her as a member of the work team at AutoZone.

This motion also asks the Court to enter judgment as a matter of law, pursuant to Fed. R. Civ. P. 50 (b), on the question whether Ms. Zych was an individual with a disability or a record

4

of disability, because defendants did not present any evidence on which the jury could have found otherwise.

## II. DISCUSSION

### a. The Jury Instructions Were Incorrect and Improperly Affected the Verdict, So a New Trial is Necessary under Rule 59 (a).

The proposed instruction addressed an important aspect of the law regarding essential functions as applied in the Seventh Circuit. Contrary to the notion that essential functions are *all* of the job's usual duties, *Miller v. Illinois Department of Transportation*, 643 F. 3d 190, 198 (7th Cir. 2011) held that in certain team working environments, the essential functions of a person with a disability do not include *all* the team's duties. Such was the case with Ms. Zych at AutoZone, and thus the requested instruction was necessary to a proper understanding and description of her ADA rights.[1]

*Miller* involved a bridge maintenance crew member who worked for a State of Illinois agency that said his essential functions included all the jobs on the crew. This was disputed but the trial court, in granting summary judgment, ruled that the job Miller could not do (working at heights above 25 feet) was an essential function of his job on the bridge crew. *Miller*, 643 F. 3d at 194. In reversing this ruling, the Seventh Circuit carefully examined the applicable ADA regulations and its precedents regarding essential functions and reasonable accommodation. The Court did not overrule its precedents that said hiring someone new in order to do the impaired person's essential functions would not be a reasonable accommodation. But it distinguished that sort of reassignment of essential functions from the work environment where certain aspects of the job were not essential for all workers because in "the normal course" individual members of

---

[1] There was no jury question whether Ms. Zych was part of a work "team," nor was there any dispute on that issue. The performance reviews for PSMs had "helps teams succeed" as one of the measures, and although Ms. Zych's performance reviews are gone, there was no dispute hers would have been excellent. This evidence standing alone should be conclusive on the "team" requirement in order for *Miller* to apply.

the crew "substitute and reassign tasks among themselves according to individual abilities, preferences, and limitations." *Id*. at 199-200. Such was the case at AutoZone, where heavy lifting was seamlessly taken over by a normally-scheduled coworker, for almost two full years in Ms. Zych's case.

The jury instructions' extra focus on the fact that job functions can be essential despite limited time spent on them, without the balancing language requested by EEOC, is further troubling in light of the holding in *Kauffman v. Petersen Healthcare VII, LLC*, 769 F. 3d 958 (7th Cir. 2014). EEOC sent the Court a letter dated October 27, 2014, just five days after the final pretrial, indicating that the recent (October 16, 2014) decision in *Kauffman* should be considered in regard to the instructions on essential functions, reasonable accommodation, and the interactive process. Docket No. 195. In *Kauffman*, the Court held that reassignment of a task (wheeling patients in wheelchairs) to another employee could be a necessary reasonable accommodation if the time spent by the other employees was not too significant. *Kauffman*, 2014 WL 5285979 *3:

> "Job restructuring" is one of the accommodations that an employer must consider. See EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act:* "Job Restructuring," www.eeoc.gov/policy/docs/accommodation.ht ml# job. If a minor adjustment in the work duties of a couple of other employees would have enabled the plaintiff despite her disability to perform the essential duties of her job as a hairdresser, the nursing home's refusal to consider making such an adjustment was unlawful. We noted in *Majors v. General Electric Co.,* 714 F.3d 527, 534 (7th Cir.2013), citing *Miller v. Illinois Dept. of Transportation,* 643 F.3d 190, 199–200 (7th Cir.2011), that "circumstances might exist when employees working in teams are able to share duties among themselves, so that such sharing might be a form of reasonable accommodation." So minor an adjustment would be "reasonable."

By eliminating EEOC's proposed jury instruction language, and highlighting the fact that an essential function "need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential," as well as highlighting the fact that reasonable

6

accommodation "does not include elimination or change of essential job functions, [or] assignment of essential job functions to other employees" ("Jury Instructions," Docket No. 208, p. 13), the instructions as given left out the critical element that job duties that would normally be considered essential, and not reassigned, can properly be considered non-essential if they are in fact reassigned among the team in the normal course. The jury was instructed what the law could possibly regard as essential functions; that those functions did not lose their status as essential by taking only a minimal amount of time; and that they could not be eliminated, changed, or reassigned as an accommodation. But the jury was not told the critical legal principle: job duties that are essential for the team can be considered non-essential for particular employees, if they are substituted and reassigned among a team according to individual abilities, preferences, and limitations. This is the law, and was precisely EEOC's case on behalf of Ms. Zych.

The omission of this principle left the jury without any guidance or description of the law in Ms. Zych's actual situation, and -- despite the "normal course" of lifting help in Ms. Zych's two years with her impairment -- would have left the jury confused about whether the ADA required *all* job duties of *all* PSMs to be considered the same. The law is clearly to the contrary, and the jury could not have reached the verdict it did without this confusion and error.

The jury was not able to decide the real issue, whether the heavy lifting was in fact an essential function as argued by AutoZone, or a marginal function as argued by EEOC. That issue should be tried properly in a new trial, where AutoZone will be able to make its argument but will not have the advantage of avoiding the impact of the "team workplace" concept on essential functions.

Fed. R. Civ. P. 59 recognizes the Court's broad discretion to grant a new trial where justice demands it.

> It has been said that the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair, and that the motion also may raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions. The absence of a listing of specific grounds should not obscure the governing principle. The court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice.

Wright, Miller, & Kane, Federal Practice and Procedure: Civil §2805 (footnotes omitted).

Where the instructions are incomplete or incorrect, and they have a prejudicial effect, a new trial is the only proper result:

> We review jury instructions de novo to determine whether, taken as a whole, they correctly and completely informed the jury of the applicable law. *Schmitz v. Canadian Pac. Ry. Co.,* 454 F.3d 678, 681–82 (7th Cir.2006); *see also Boyd v. Illinois State Police,* 384 F.3d 888, 894 (7th Cir.2004). We defer to the district court's phrasing of an instruction that accurately states the law, *Schmitz,* 454 F.3d at 682; however, we shall reverse when the instructions "misstate the law or fail to convey the relevant legal principles in full" and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant. *Byrd v. Illinois Dep't of Pub. Health,* 423 F.3d 696, 705 (7th Cir.2005). We review a district court's decision on a motion for a new trial for an abuse of discretion. *Schobert v. Illinois Dep't of Transp.,* 304 F.3d 725, 729 (7th Cir.2002). However, if the district court committed legal error in instructing the jury, the decision to deny the new trial was itself an abuse of discretion. *See Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir.2007), *cert. denied,* 551 U.S. 1132, 127 S.Ct. 2988, 168 L.Ed.2d 705 (2007), (noting that a court categorically abuses its discretion when a decision rests on legal error).

*Huff v. Sheahan*, 493 F. 3d 893, 899 (7th Cir. 2007) (reversing defense verdict and denial of new trial motion and granting new trial, where (1) instructions on Title VII sexual harassment claim failed to explain that showing of tangible employment action made affirmative defense unavailable; and (2) prejudice was shown in regard to the instruction because Section 1983 verdict in favor of defendants was not proof that Title VII discrimination – with its lesser intent requirement -- had not occurred). Here the same result as in *Huff* is called for. The instructions as

8

a whole did not completely explain an important basis for liability: how a claimant can be qualified under the ADA based on normal-course assignment of essential functions among team members. The only explanation of reassignment the jury got was that the law did not allow "elimination or change of essential job functions" or "assignment of essential job functions to other employees." This incompleteness was prejudicial because it disallowed EEOC's properly supported legal theory from being considered. The result was no less prejudicial than in *Huff*, where the jury considered an affirmative defense without first evaluating whether it was in fact available. Here the jury evaluated EEOC's showing of qualifications without first evaluating whether the qualifications contended by the defense were required of all team members. *Cf*., *Schmitz v. Canadian Pacific Railway Co*., 454 F. 3d 678, 684 (7th Cir. 2006) (prejudice shown because jury instruction did not indicate law required a given practice (trimming vegetation) that was relevant to plaintiff's claim; noting that "there is a world of difference between telling the jury that Schmitz alleged the railroad should have taken a particular precaution and telling the jury that federal law *required* the railroad to take that very precaution"); likewise the jury here was told EEOC alleged Zych was qualified to perform the essential functions, but not that essential functions could lose that title as a matter of law by being transferred among team members in the normal course. *See also*, *Javier v. City of Milwaukee, et al*., 670 F. 3d 823, 830 (7th Cir. 2012) (finding that use of pattern instruction, while accurate, was "materially incomplete" by not including proposed language that would explain the important legal principle "critical in [that] case" (regarding scope of employment)).

       The decision to grant a new trial under Rule 59 (a) is within the Court's discretion, and correcting errors is within the Court's power. *Vojdani v. Pharmsan Labs, Inc*., 741 F. 3d 777, 782 (7th Cir. 2013) (affirming grant of new trial by district court, where verdict answers were

9

Case 2:12-cv-00303-WEC    Filed 12/19/14    Page 9 of 18    Document 215

inconsistent and could not be reconciled: "We see no reason to reject the district court's decision in this case to correct the problem on its own"). The trial court enjoys a "superior vantage point" from which to exercise its discretion on such matters. *Id.*[2]

### b. The Manifest Weight of the Evidence Supports a New Trial under Rule 59 (a).

---

[2] EEOC has argued that the instruction on "qualified" as given was likely to confuse the jury. EEOC is mindful of Fed. R. Evid. 606, which generally makes communications from jurors not competent evidence on the question whether the verdict is valid. However, in *Nelson v. Lis, et al.,* 2011 WL 4460492 (N.D. Ill., September 27, 2011, copy attached), the court noted questions received from the jury in granting a new trial based on a confusing instruction (". . . in light of the questions the jury raised during their deliberations, there is reason to conclude that the flawed instruction confused the jury and resulted in prejudice." *Nelson* at *3). Here, the jury question indicating a desire to express its opinion was amplified by the communication to the EEOC from a juror, unsolicited by EEOC, but suggested by the Court:

> **Good evening,**
>
> **I wanted to send you a brief note describing some things fresh on my mind. I was a recent juror for the trial that ended today between the EEOC representing Margaret Zych and Autozone.**
>
> **To be completely honest and candid, I think the jury was totally in favor of Mrr. [sic] Zych with the exception that we had to follow the law, and it was hard to get around the fact she wasn't 100% "qualified" when she was let go from Autozone. This was by far the largest debate and argument we had in the jury room. The other large deciding factor was that Mrs Zych was unemployed for so long, in some peoples [sic] eyes she was looking for an easy way out. Though a stellar employee person when employed, it's hard for a middle class group to wrap their head around someone being unemployed for that long, especially knowing she would have a trial.**
>
> **My reason for this note is that I feel awful for the results of the case, for you, and for Mrs Zych. I really saw this going a different route in my head and during the trial. I hope that you continue to take on trials/clients like this one and wanted to put emphasis that we wanted to send a note, and did so to the folks at Autozone. We told them we were appalled with their actions and they need to clean up their act.**
>
> **Though the morale is down, I really felt that the case you laid out and the style of your actions in court was phenomenal.**
>
> **Thanks,**
> **[Juror]**

*See*, Declaration of Patrick DeWolf, filed herewith, and Exhibit A attached thereto; Exhibit A is filed under seal in the same manner as the Court's filing of the initial jury communication, Docket No. 210. EEOC submits, based on these communications, that the "Qualified" instruction was not only likely to confuse the jury, it apparently did.

10

An independent basis for a new trial is that the manifest weight of the evidence prevented a verdict in favor of AutoZone. The issue whether Ms. Zych was a qualified individual with a disability should never have been answered "No," given the greater weight of the evidence. The Court declined to give EEOC's proposed instruction on the definition of "Qualified," but, as noted above, gave the Seventh Circuit's form instruction No. 4.05, "Definition of 'Qualified'" (2005 rev.), as modified by the Defendants' requested addition of language from *Basith v. Cook County*, 241 F. 3d 919, 929 (7th Cir. 2001). The given instruction stated as follows (letters in brackets added to second paragraph to serve as references in discussion sections below):

> Under the ADA, Ms. Zych was "qualified" if she had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without a reasonable accommodation. You should only consider Ms. Zych's abilities at the time when she was terminated on July 13, 2009.
>
> Not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider **[A]** the reasons the job exists, **[B]** the number of employees Defendants have to do that kind of work, **[C]** the degree of specialization the job requires, **[D]** Defendants' judgment about what is required, **[E]** the consequences of not requiring an employee to satisfy that function, and **[F]** the work experience of others who held the position.
>
> The amount of time spent on the job performing the function is also a factor used to determine whether a task is an essential function. However, an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential.

"Jury Instructions," Docket No. 208, p. 13.

Under this formulation, even without the language of the regulations requested by EEOC[3], the weight of the evidence at trial supports EEOC. This includes evidence from both

---

[3] EEOC's proposed instruction included the language of the relevant regulation, 29 C.F.R. §1630.2 (n) (1)-(3):

(1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
(2) A job function may be considered essential for any of several reasons, including but not limited to the following:
(i) The function may be essential because the reason the position exists is to perform that function;

11

parties that (1) AutoZone customer service employees worked in teams, in which the division of heavy lifting was not specifically assigned; (2) store employees were expected to get help with lifting things that were too heavy for them to carry; (3) "truck days" were managed in a way that did not require heavy lifting from all team members, some of whom worked the registers and stocked the sales floor with lighter items; (4) no extra staff was ever necessary to help Ms. Zych; (5) there were no complaints from customers, coworkers, or management; (6) AutoZone did not put Ms. Zych under a so-called "light duty" program; (7) Barry Kurta performed the same customer service as Ms. Zych, without incident, despite his paralyzed arm; and (8) there was no documented or prescribed quantity of heavy lifting that Ms. Zych was required to provide, so no evidence to contradict the lifting estimates stated by her and Alfredo Morales. In the following sections, the subject-matter captions include references to the pertinent parts of the jury instruction on the definition of "Qualified":

      **1.**      **Team environment [A, C, F]**

AutoZone's PSMs and hourly sales staff were there for customer service: selling parts to customers. The employees were reviewed on the basis of "helping teams succeed." There was no dispute that store staff acted as a team in all respects in regard to lifting. No evidence was

---

(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
(3) Evidence of whether a particular function is essential includes, but is not limited to:
(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
((v) The terms of a collective bargaining agreement;)
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

EEOC's Proposed Jury Instructions (Supplement), Docket No. 199-1, p. 15, "8. DEFINITION OF "QUALIFIED" (EEOC).

introduced to indicate that employees were expected or required to act alone in regard lifting or getting parts for customers.

### 2. Lifting expectations [B, D, F]

The store handbook (Ex. 20) said if you had to lift more than you could carry, get help. There was no evidence to show this was not followed by store personnel, or that there was no one to provide the help when requested. AutoZone's headquarters safety witness, Mr. Gage, said this policy (or "safety tip") was limited to particular kinds of lifting, but then on cross-examination admitted it was good advice for store employees generally. Nor did he indicate that the Cudahy employees did not follow it, as several said they did.

### 3. Truck days [A, B, E, F]

There was no evidence that truck days were a problem for the Cudahy store, either before or after Ms. Zych's injury. She was still scheduled for work on all truck days, and helped primarily with customer service and stocking parts on the sales floor. She was needed for those functions, and was a valuable part of the truck day team.

### 4. No extra employees [B, D, F]

There was no evidence that extra help was ever needed, beyond the regular complement of store staff. The only adjustment mentioned was that Ms. Zych and Mr. Kurta were not scheduled together. This schedule change was not a hardship on anyone, and AutoZone did not say it was.

### 5. No complaints [A, E, F]

No store employees said helping Ms. Zych was a problem. Mr. Maldonado, for example, said that's what he was paid to do. No managers complained, and Mr. Diaz and Mr. Morales both were distressed to lose Ms. Zych. As for customer complaints, Mr. Kurta said he recalled

such an incident, but if it occurred it was not shown to be a serious issue or to have even reached Mr. Morales, who expressly denied there were any. AutoZone called no management witness to rebut the lack of customer complaints.

### 6. No "light duty" program [C, E]

Ms. Zych was not placed on any "light duty" program for employees with impairments, but simply did her normal job, subject to her lifting restrictions. No AutoZone witness testified that there was a light duty program, apart from following doctors' restrictions and performing team duties according to each others' capacities and abilities. There was no change in the store's functions to address her limitation; to the contrary, she worked as a PSM, on a normal schedule, and her minimal requests for help were never an issue.

### 7. Barry Kurta [B, C, D, E, F]

The evidence was uncontroverted that a person like Kurta, with only one functional arm, was able to do the customer service team member job and get good performance reviews. It was undisputed that Mr. Kurta had limitations on lifting but continued to work at AutoZone unabated, until after Ms. Zych filed her EEOC charge.

### 8. No required quantity of lifting [C, D, E]

AutoZone's bald assertion, that lifting heavy items was necessary, was offered without context, and did not specify an actual amount or number of such lifts that was required of store employees. Ms. Zych and Mr. Morales both testified that a few lifts per shift might require assistance, but no more than that. AutoZone's extensive use of video was visually stimulating but not backed by proof of the actual number of times an employee would have to lift a heavy item.

Based on all this evidence, there should be a new trial because the weight of the evidence was in favor of EEOC on the first verdict question.

14

The Seventh Circuit addressed this issue in *Mejia v. Cook County, Illinois*, 650 F. 3d 631 (7th Cir. 2011):

> The Supreme Court has long recognized that a district court can grant a motion for a new trial if the verdict was against the weight of the evidence . . . In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. *See, e.g., Byrd,* 356 U.S. at 540, 78 S.Ct. 893 ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses....") . . . If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate.

*Mejia*, 650 F. 3d at 633, citations omitted. The *Mejia* court noted further that the "manifest weight" standard gives "a certain deference" to the jury's conclusion, but not at the expense of the Court's duty not to "approve a miscarriages of justice." *Id*., at n. 1, citations omitted.

The Court should consider the foregoing evidence on whether Ms. Zych was qualified, together with the circumstances of her termination, in deciding if a new trial is warranted. She was fired without any review of her actual abilities, as admitted by Dawnn Devereaux and emphasized by Mr. Morales. Her qualifications simply were not an issue for AutoZone until after she filed a charge of discrimination, at which point AutoZone created a record to say it had tried to work out an accommodation. AutoZone relied in part on a job description that had newly-added arm requirements, as opposed to the one given to her physical therapists, which had none. And the firing took place almost a full month after the final restriction was issued to Ms. Zych, without any problems and with Mr. Morales thinking the matter was over with and she was back to work. This evidence does not point to a lack of qualifications for the essential functions of the job, but to a miscarriage of justice that is not supported by the evidence and should not stand. A new trial is appropriate.

### c. Judgment as a Matter of Law Should Be Granted on Zych's Disability and Record of Disability under Rule 50 (b).

As part of a new trial, EEOC should not have to prove again that Zych was a person with a disability and a record of disability. Under Fed. R. Civ. P. 50 (a),

> **(a) Judgment as a Matter of Law.**
> **(1)** *In General.*
> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> **(A)** resolve the issue against the party; and
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> **(2)** *Motion.*
> A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

EEOC moved under Rule 50 at the conclusion of AutoZone's defense, for judgment as a matter of law on the issue whether Ms. Zych was a person with a disability or a record of disability, on the ground that EEOC's medical evidence from Dr. Shovers established both of these and there was no rebuttal evidence. The only evidence offered by AutoZone was confirmation that Ms. Zych had an impairment from her injury sustained at AutoZone, that she had extensive treatment and two surgeries for it, and that she was permanently limited in regard to lifting thereafter. AutoZone has been fully heard on the issue and judgment as a matter of law is appropriate.

Judgment as a matter of law is granted where no reasonable jury could have found from the evidence adduced at trial, viewed in the light most favorable to the opposing party, would support a verdict on the issue. *Walker v. Board of Regents of the University of Wisconsin System*, 410 F. 3d 387, 393 (7th Cir. 2005) (affirming trial court's grant of judgment as a matter of law under Rule 50 on the issue whether, despite a favorable verdict, plaintiff had presented evidence

16

Case 2:12-cv-00303-WEC    Filed 12/19/14    Page 16 of 18    Document 215

from which a rational jury could have found in her favor, and noting that "a mere scintilla of evidence will not suffice"). AutoZone did not present any evidence at all to support a finding that Ms. Zych was not a person with a disability or a record of disability. To the contrary, it in effect adopted EEOC's evidence, including the various restrictions she was put under, the physical therapy visits and surgeries it oversaw through its Workers' Comp program, and its ultimate rejection of her based on the permanency rating that left her limited. On this latter point, Dr. Shovers was the only medical witness to testify, and he testified, without contradiction, that her ability to lift was less than most people's. This is the definition of disability, and AutoZone did not challenge it in any way. *See*, 29 C.F.R. §1630.2 (j) (1) (ii):

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

AutoZone's approach to the disability evidence was to question whether Ms. Zych actually felt the pain she said she had. This approach lacked any evidentiary support; Dr. Shovers said he had no reason to doubt her complaints of pain, in part because she did not show signs of malingering and always indicated she wanted to get back to work, and in part because his treatment of her was based on all her symptoms, including her pain. Although it is not the court's job to weigh the evidence or pass on the credibility of witnesses in the Rule 50 context (*see*, Wright, Miller, & Kane, Federal Practice and Procedure: Civil §2524, nn. 10-11 and cases cited), that is not a relevant issue here because there simply is no evidence to support the notion Ms. Zych was not a person with a disability and a record of disability. Judgment as a matter of law is proper on this issue, and should govern in any subsequent trial.

**III.     CONCLUSION**

For the reasons set forth herein, the Court, in its discretion, should grant EEOC a new trial in this matter under Rule 59, and grant judgment as a matter of law under Rule 50 on EEOC's proof that Ms. Zych was a person with a disability and a record of disability.

| | |
|---|---|
| Dated this 19th day of December, 2014 | s/Brian C. Tyndall<br>BRIAN C. TYNDALL<br>Senior Trial Attorney<br><br>s/Jean P. Kamp<br>JEAN P. KAMP<br>Associate Regional Attorney<br><br>EQUAL EMPLOYMENT OPPORTUNITY<br>  COMMISSION<br>310 W. Wisconsin Avenue<br>Suite #500<br>Milwaukee, WI 53203-2292<br>Phone  (414) 297-1130<br>Fax     (414) 297-3146<br>TDD    (414) 297-1115<br>email   brian.tyndall@eeoc.gov |

**CERTIFICATE OF SERVICE**

I, Anne-Louise Samson, certify that on December 19, 2014, I served the foregoing document by e-mail addressed to:

> Emery K. Harlan, Esq.
> Michael Mishlove, Esq.
> Matthew J. Feery, Esq.
> Gonzalez, Saggio & Harlan, LLP
> 225 E. Michigan Avenue, 4th Floor
> Milwaukee, Wisconsin 53202
> Phone: 414-277-8500
> Fax: 414-277-8521
> Email:  Emery_Harlan@gshllp.com,
>         Michael_Mishlove@gshllp.com,
>         Matthew_Feery@gshllp.com
>
>                    s/ *Anne-Louise Samson*
>                    Anne-Louise Samson
>                    Paralegal

18