UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
------------------------------------------------------------------
EQUAL EMPLOYMENT OPPORTUNITY        )
COMMISSION,                         )
                                    )      Case No. CV 12-CV-303
                    Plaintiff,      )      Milwaukee, Wisconsin
                                    )
        vs.                         )      November 21, 2014
                                    )      1:24 p.m.
AUTOZONE, INC., and                 )
AUTOZONERS, LLC,                    )      **DAY 5**
                                    )
                    Defendants.     )

------------------------------------------------------------------

**TRANSCRIPT OF JURY TRIAL**
**FINAL JURY INSTRUCTIONS**
BEFORE THE HONORABLE WILLIAM E. CALLAHAN, JR.
UNITED STATES MAGISTRATE JUDGE, and a jury.

APPEARANCES:

  For the Plaintiff:          Jean P Kamp
                              United States Equal Employment
                              Opportunity Commission
                              Chicago District Office
                              500 W Madison St - Ste 2000
                              Chicago, IL 60661
                              312-353-7719
                              Fax: 312-353-8555
                              Email: jean.kamp@eeoc.gov

                              Brian C Tyndall
                              United States Equal Employment
                              Opportunity Commission
                              Milwaukee District Office
                              310 W Wisconsin Ave - Ste 800
                              Milwaukee, WI 53203-2292
                              414-297-1130
                              Fax: 414-297-3146
                              Email: brian.tyndall@eeoc.gov


  U.S. Official Reporter:     JOHN T. SCHINDHELM, RMR, CRR,
  Transcript Orders:          WWW.JOHNSCHINDHELM.COM

Proceedings recorded by computerized stenography,
transcript produced by computer aided transcription.



```
 1

 2   APPEARANCES CONT'D:

 3   For the Defendants:          Michael Mishlove
                                  Gonzalez Saggio & Harlan LLP
 4                                111 E Wisconsin Ave - Ste 1000
                                  Milwaukee, WI 53202
 5                                414-277-8500
                                  Fax: 414-277-8521
 6                                Email: michael_mishlove@gshllp.com

 7                                Emery K Harlan
                                  Gonzalez Saggio & Harlan LLP
 8                                111 E Wisconsin Ave - Ste 1000
                                  Milwaukee, WI 53202
 9                                414-277-8500
                                  Fax: 414-277-8521
10                                Email: emery_harlan@gshllp.com

11                                Matthew J Feery
                                  Gonzalez Saggio & Harlan LLP
12                                111 E Wisconsin Ave - Ste 1000
                                  Milwaukee, WI 53202
13                                414-277-8500
                                  Fax: 414-277-8521
14                                Email: matthew_feery@gshllp.com

15

16

17

18

19

20

21

22

23

24

25
```

1      FINAL JURY INSTRUCTIONS

2          THE COURT:  Good afternoon, ladies and gentlemen.  We

3   have now reached that point in these proceedings where I'm going

4   to be giving you the instructions that are to be applied by you

5   in deciding this case.  After I instruct you on the law, the

6   plaintiff will be given an opportunity to make its closing

7   argument, and then the defendants will have an opportunity to

8   give their closing argument, and then we'll hear finally from

9   the plaintiff because the plaintiff has the burden of proof in

10  this case.

11          Now I want to tell you something else.  When you go

12  back into the jury room for your deliberations you're each going

13  to have a copy of these instructions.  I tell you that because

14  you don't have to memorize them.  You will have them, but it is

15  my duty to instruct you on the law nevertheless.

16          Members of the jury:

17          Now that you have heard all the evidence in the case,

18  it becomes my duty to instruct you on the law that applies to

19  this case.

20          These instructions will be in three parts.

21          First:  The instructions on general rules which define

22  and control the jury's duties in a civil case;

23          Second:  The instructions which state the rules of law

24  which you must apply; that is, what the parties must prove in

25  their case; and,

1    Third:  Some rules and guidelines for your

2    deliberations and the return of your verdict.

3    At the conclusion of my instructions, the attorneys

4    for the parties will deliver their closing arguments, followed

01:26    5    by the very brief concluding instructions of the court.

6    Copies of these instructions will be available in the

7    jury room for each of you to consult should you find it

8    necessary.

9    Members of the jury, you have seen and heard all the

01:26    10    evidence and arguments of the attorneys -- or you will, but

11    you've heard all the evidence.

12    You have two duties as a jury.  Your first duty is to

13    decide the facts from the evidence in the case.  This is your

14    job, and yours alone.

01:26    15    Your second duty is to apply the law that I give you

16    to the facts.  You must follow these instructions, even if you

17    disagree with them.  Each of the instructions is important, and

18    you must follow all of them.  As jurors, you have no right to

19    disregard, or to give special attention to any one of the

01:26    20    instructions, or to question the wisdom of any rule of law.

21    Perform these duties fairly and impartially.  Do not

22    allow sympathy, prejudice, fear, or public opinion to influence

23    you.  You should not be influenced by any person's race, color,

24    religion, national ancestry, or sex.

01:27    25    Nothing I say now, and nothing I said or did during

1    the trial, is meant to indicate any opinion on my part about

2    what the facts are or about what your verdict should be.

3            This case should be considered and decided by you as

4    an action between persons of equal standing in the community, of

5    equal worth, and holding the same or similar stations in life.

6    All persons, including corporations, are equal before the law,

7    and corporations, whether large or small, are entitled to the

8    same fair and conscientious consideration by you as any other

9    person.

10           As jurors, you should consider and view the evidence

11   in light of your own observations and experiences in the affairs

12   of life.  In determining the facts, you should do so from a fair

13   consideration of the evidence.  This means you should not be

14   influenced by prejudice, fear, favor, personal likes or

15   dislikes, opinions, or sympathy.

16           In reaching your verdict, you may consider only the

17   evidence and exhibits -- Strike that -- only the testimony and

18   exhibits received in evidence.  Certain things are not evidence

19   and you may not consider them in determining what the facts are.

20   Those matters and things that are not evidence include the

21   following:

22           First, if I told you to regard any testimony or

23   exhibits or struck any testimony or exhibits from the record,

24   such testimony or exhibits are not evidence and must not be

25   considered.

1    I don't think that happened in this case.  But if I

2  did, it's not evidence.

3         Second, anything that you may have seen or heard

4  outside the courtroom is not evidence and must be entirely

5  disregarded.  This includes any press, radio, Internet or

6  television reports you may have seen or heard.  Such reports are

7  not evidence and your verdict must not be influenced in any way

8  by such publicity.

9         Third, questions and objections or comments by the

10  lawyers are not evidence.  Lawyers have a duty to object when

11  they believe a question is improper.  You should not be

12  influenced by any objection, and you should not infer from my

13  rulings that I have any view as to how you should decide the

14  case.

15         Fourth, the lawyers' opening statements and closing

16  arguments to you are not evidence.  Their purpose is to discuss

17  the issues and the evidence.  If the evidence as you remember it

18  differs from what the lawyers said, your memory is what counts.

19         If, during the course of this trial, you have gained

20  any impression that I have a feeling one way or another about

21  this case, then you should completely disregard any such

22  impression because you, as jurors, are the sole judges of the

23  evidence and the credibility of the witnesses in this case.  My

24  feelings are wholly immaterial.  Neither by these instructions,

25  nor by any ruling or remark which I have made, do I mean to

1    indicate any opinion as to the facts or as to what your verdict

2    should be.  You are the sole and exclusive judges of the facts.

3          In determining the facts, you are reminded that before

4    each member of the jury was accepted and sworn to act as a

5    juror, you were asked questions regarding your competency,

6    qualifications, fairness, and freedom from prejudice or

7    sympathy.  On the faith of those answers, each of you was

8    accepted by the parties to serve as a juror.  Therefore, those

9    answers are as binding on each of you now as they were then, and

10   should remain so until the jury is discharged from consideration

11   of this case.

12         Any notes you may have taken during this trial are

13   only aids to your memory.  The notes are not evidence.  If you

14   have not taken notes you should rely on your independent

15   recollection of the evidence and not be unduly influenced by the

16   notes of other jurors.  Notes are not entitled to any greater

17   weight than the recollections or impressions of each juror about

18   the testimony.

19         Now, the evidence from which you are to determine the

20   facts in order to reach a verdict consists of the following:

21         First:  The sworn testimony of witnesses, both on

22   direct and cross-examination, regardless of who called the

23   witness;

24         Second:  The exhibits that have been received into

25   evidence, regardless of who may have produced them; and

7

1    Third:  Any facts to which if lawyers for the parties

2    have agreed or stipulated.

3         In determining whether any fact has been proved, you

4    should consider all of the evidence bearing on the question

5    regardless of who introduced it.

6         Statements and arguments of counsel are not evidence

7    in the case.  When, however, the attorneys on both sides

8    stipulate or agree as to the existence of a fact, the jury must,

9    unless otherwise instructed, accept the stipulation and regard

10   that fact as proved.

11        During this trial, I may have asked a witness a

12   question myself.  Do not assume that because I asked questions I

13   hold any opinion on the matters I asked about, or on what the

14   outcome of the case should be.

15        Now, you may have heard the phrases "direct evidence"

16   and "circumstantial evidence."  Direct evidence is proof that

17   does not require an inference, such as the testimony of someone

18   who claims to have personal knowledge of a fact.  Circumstantial

19   evidence is proof of a fact, or a series of facts, that tends to

20   show that some other fact is true.

21        As an example, direct evidence that it is raining is

22   testimony from a witness who says, "I was outside a minute ago

23   and I saw it raining."  Circumstantial evidence that it is

24   raining is the observation of someone entering a room carrying a

25   wet umbrella.

8

1    The law makes no distinction between the weight to be
2  given to either direct or circumstantial evidence.  You should
3  decide how much weight to give to any evidence.  In reaching
4  your verdict, you should consider all the evidence in the case,
5  including the circumstantial evidence.

6    It is for you to decide whether a fact has been proved
7  by circumstantial evidence.  In making that decision, you must
8  consider all the evidence in light of reason, common sense, and
9  experience.

10    You are to consider only the evidence in the case.
11  But in your consideration of the evidence you are not limited to
12  the bald statements of the witnesses.  In other words, you are
13  not limited to what you see and hear as the witnesses testify.
14  You are permitted to draw, from facts that you find have been
15  proven, such reasonable inferences as seem justified in the
16  light of your experience.

17    In other words, you should use common sense in
18  weighing the evidence and consider the evidence in light of your
19  own observations in life.

20    In our lives, we often look at one fact and conclude
21  from it that another fact exists.  In law we call this
22  "inference."  A jury is allowed to make reasonable inferences.
23  Any inference you make must be reasonable and must be based on
24  the evidence in the case.

25    I have a duty to caution or warn an attorney who does

1  something that I believe is not in keeping with the rules of

2  evidence or procedure.  You are not to draw any inference

3  against the side whom I may caution or warn during the trial.

4  You, as jurors, are the sole judges of the credibility

5  of the witnesses and the weight that their testimony deserves.

6  You must decide whether the testimony of each of the witnesses

7  is truthful and accurate, in part, in whole, or not at all.  You

8  must also decide what weight, if any, you give to the testimony

9  of each witness.

10  Now, in evaluating the testimony of any witness,

11  including any party to the case, you may consider, among other

12  things:

13  the ability and the opportunity that the witness had

14  to see, hear, or know the things that the witness testified

15  about;

16  the witness' memory;

17  any interests, bias, or prejudice the witness may

18  have;

19  the witness's intelligence;

20  the manner of the witness while testifying;

21  and the reasonableness of the witness's testimony in

22  light of all the evidence in the case.

23  Inconsistencies or discrepancies in the testimony of a

24  witness, or between the testimony of different witnesses, may or

25  may not cause you to discredit such testimony.  Two or more

1    persons witnessing an incident or a transaction may see or hear

2    it differently.  An innocent misrecollection, like failure of

3    recollection, is a common experience.  In weighing the effect of

4    a discrepancy, always consider whether it pertains to a matter

5    of importance or an unimportant detail, and whether the

6    discrepancy results from innocent error or intentional

7    falsehood.

8            After making your own judgment, you will give the

9    testimony of each witness such weight, if any, as you may think

10   it deserves.

11           You may, in short, accept or reject the testimony of

12   any witness in whole or in part.

13           A witness may be discredited or impeached by

14   contradictory evidence; or by evidence that at some other time

15   the witness has said or done something, or has failed to say or

16   do something, which is inconsistent with the witness's present

17   testimony.

18           If you believe any witness has been impeached and thus

19   discredited, it is your exclusive province to give the testimony

20   of that witness such credibility, if any, as you may think it

21   deserves.

22           You may find the testimony of one witness or a few

23   witnesses more persuasive than the testimony of a larger number.

24   You need not accept the testimony of the larger number of

25   witnesses.

1          The rules of evidence ordinarily do not permit

2   witnesses to testify as to opinions or conclusions.  An

3   exception to this rule exists as to those whom we call "expert

4   witnesses."  Witnesses who, by education and experience, have

5   become expert in some art, science, profession, or calling, may

6   state their opinions as to relevant and material matters in

7   which they profess to be expert, and may also state their

8   reasons for the opinion.

9          You should consider the expert opinions received in

10   evidence in this case, and give them such weight as you may

11   think they deserve.  In determining the weight to be given such

12   opinions, you should consider the qualifications and the

13   credibility of the experts -- in this case I think there was

14   just one -- whether the opinions are based upon established or

15   conceded facts in the case, as well as the reasons given for the

16   opinions.

17          Now, certain charts and summaries have been shown to

18   you to help explain the facts disclosed by the books, records,

19   and other documents that are evidence in the case.  However,

20   such charts and summaries are not in and of themselves evidence

21   or proof of any facts.  If such charts or summaries do not

22   correctly reflect facts or figures shown by the evidence in the

23   case, you should disregard them.

24          In other words, such charts or summaries are used only

25   as a matter of convenience; so if, and to the extent that you

12

1  find they are not in truth summaries of facts or figures shown

2  by the evidence in the case, you are to disregard them entirely.

3       During the trial in this case, certain testimony has

4  been presented to you by way of deposition consisting of sworn

5  recorded answers to questions asked of the witness in advance of

6  the trial by one or more of the attorneys for the parties to the

7  case.

8       The testimony of a witness who, for some reason,

9  cannot be present to testify from the witness stand may be

10  presented by deposition. Such testimony is entitled to the same

11  consideration, and is to be judged as to credibility, weighed,

12  and otherwise considered by the jury, insofar as possible, in

13  the same way as if the witness had been present and had

14  testified from the witness stand.

15       You are instructed that it is proper for a lawyer to

16  meet with any witness in preparation for trial.

17       Now, the law does not require any party to call as

18  witnesses all persons who may have been present at any time or

19  place involved in the case, or who may appear to have some

20  knowledge of the matters in issue at this trial. Nor does the

21  law require any party to produce as exhibits all papers and

22  things mentioned in the evidence in the case.

23       Now, evidence that at some other time a witness, not a

24  party to this action, has said or done something that is

25  inconsistent with the witness's testimony at the trial, may be

1  considered for the sole purpose of judging the credibility of

2  the witness but may never be considered as evidence of proof of

3  the truth of any such statement.

4      Where, however, the witness is a party to the case,

5  and by such statement, or other conduct, admits some fact or

6  facts against his or her interest, then such statement or other

7  conduct, if knowingly made or done, may be contracted as

8  evidence of the truth of the fact or facts so admitted by such

9  party, as well as for the purpose of judging the credibility of

10  the party as a witness.

11      An act or omission is knowingly done if done

12  voluntarily and intentionally and not because of mistake or

13  accident or other innocent reason.

14      Now, this is Part 2 of the instructions, and it deals

15  with what we call the substantive law to be applied.

16      When I say a particular party must prove something by

17  "a preponderance of the evidence," or when I use the expression

18  "if you find," or "if you decide," this is what I mean:  When

19  you have considered all the evidence in the case, you must be

20  persuaded that it is more probably true than not true.

21      The Equal Employment Opportunity Commission, or the

22  EEOC, is the plaintiff in this case.  The EEOC is an agency of

23  the United States government that is responsible for enforcing

24  the laws against discrimination in the workplace.  When a person

25  feels that his or her employer has discriminated against them,

1    that person may file a charge of discrimination with the EEOC.

2    The EEOC has the authority to file a lawsuit and seek remedies

3    against an employer on behalf of such a person or the person may

4    sue on her own behalf.  The EEOC brings this lawsuit on behalf

5    of Margaret Zych.

6            Now, the plaintiff has brought this lawsuit under a

7    federal law called the American With Disabilities Act, which is

8    often referred to by its initials, "ADA."  Under the ADA, it is

9    illegal for an employer to discriminate against a person with a

10   disability if that person is qualified to do the essential

11   functions of her job and the employer is aware of her

12   limitations.

13           More specifically, the ADA provides, in part, that no

14   employer shall discriminate against a qualified individual on

15   the basis of disability in regard to job application procedures,

16   the hiring, advancement, or discharge or of employees, employee

17   compensation, job training, and other terms, conditions, and

18   privileges of employment.  The ADA also provides, in part, that

19   it is a violation to not make reasonable accommodations to the

20   known physical limitations of an otherwise qualified individual

21   with a disability who is an applicant or employee, unless the

22   employer can demonstrate that the accommodation would impose an

23   undue hardship on the operation of its business or would have

24   posed a threat to its employees.

25           In this case, the EEOC claims that the defendants

1    discriminated against Margaret Zych by terminating her because

2    of her disability and by not accommodating her disability.

3    Defendants deny that they discriminated against Ms. Zych and

4    says that Ms. Zych was not disabled; that she could not perform

01:46  5    all of the essential functions of her position; that she never

6    requested a reasonable accommodation; that no reasonable

7    accommodation existed that would allow her to perform all the

8    essential functions of her position; that continuing to employ

9    her as a part sales manager in light of her lifting restrictions

01:46  10    would have created a significant risk of substantial harm to her

11    and others, and that any accommodation of her after her

12    physician imposed a permanent lifting restriction upon her of 15

13    pounds would have created an undue hardship.

14         As you listen to these instructions keep in mind that

01:46  15    many of the terms I use have a special meaning under the law.

16    So please remember to consider the specific definitions I give

17    rather than using your own opinion as to what these terms mean.

18         To succeed on its ADA termination claim, the EEOC must

19    prove four things by a preponderance of the evidence:

01:47  20         1.  Ms. Zych had a disability or a record of a

21    disability.  I will define "disability" and several other

22    important terms for you later in these instructions.

23         2.  Ms. Zych was "qualified" to perform the job;

24         3.  Defendants terminated Ms. Zych's employment.

01:47  25         4.  Defendants would not have terminated Ms. Zych's

1   employments if she had not had a disability, but everything else

2   had been the same.

3        To succeed on its reasonable accommodation claim, the

4   EEOC must prove five things by a preponderance of the evidence:

5        1.  Ms. Zych had a disability.  Again, I will define

6   "disability" and several other important terms for you later in

7   these instructions;

8        2.  Ms. Zych was qualified to perform the job;

9        3.  Ms. Zych requested an accommodation or the need

10   for an accommodation was known by the defendants;

11        4.  The defendants were aware of Ms. Zych's disability

12   at the time of her request or at the time that they knew of the

13   need for the accommodation; and

14        5.  The defendants failed to provide Ms. Zych with a

15   reasonable accommodation.

16        Now, I will defiant various terms for the you.

17        Under the ADA the term "disability" means a physical

18   impairment that "substantially limits" a major life activity,

19   such as lifting.  I will now define some of the terms in more

20   detail.  Again, I remind you to consider the specific

21   definitions I give you, and not use your own opinion as to what

22   these terms mean.

23        The term "physical impairment" means, in part, any

24   physiological condition or anatomical loss affecting one or more

25   body systems, including the musculoskeletal system.

1    Under the ADA, an impairment is a disability if it

2 substantially limits the ability of an individual to perform a

3 major life activity as compared to most people in the general

4 population.  An impairment need not prevent, or significantly or

01:49  5 severely restrict, the individual from performing a major life

6 activity in order to be considered substantially limiting.

7    To decide if Ms. Zych's alleged impairment

8 substantially limits her ability to lift, you should consider

9 the nature and severity of the impairment, how long it is

01:49 10 expected to last, and its expected long-term impact.

11    Under the ADA, a person has a "record of a disability"

12 if she has a record of a physical or mental impairment that

13 substantially limits a person's ability to perform one or more

14 major life activities.

01:50 15    Now the word "qualified."

16    Unit the ADA, Ms. Zych was "qualified" if she had the

17 skill, experience, education, and other requirements for the job

18 and could do the job's essential functions, either with or

19 without a reasonable accommodation.  You should only consider

01:50 20 Ms. Zych's abilities at the time when she was terminated on July

21 13th, 2009.

22    Now, not all job functions are "essential." Essential

23 functions are a job's fundamental duties.  In deciding whether a

24 function is essential, you may consider the reasons the job

01:51 25 exists, the number of employees Defendants have to do that kind

1    of work, the degree of specialization the job requires, the

2    Defendants' judgment about what is required, the consequences of

3    not requiring an employee to satisfy that function, and the work

4    experience of others who held the position.

5    The amount of time spent on the job performing the

6    function is also a factor used to determine whether a task is an

7    essential function.  However, an essential function need not

8    encompass the majority of an employee's time, or even a

9    significant quantity of time, to be essential.

10    Now, under the ADA -- this is the word "accommodate."

11    Under the ADA, to "accommodate" a disability is to make some

12    change that will enable an individual with a disability to

13    perform the essential functions of the job.  An accommodation is

14    "reasonable" if it is effective and its costs are not clearly

15    disproportionate to the benefits that it will produce.

16    Now, a reasonable accommodation may include a change

17    in such things as ordinary work rules, facilities, conditions,

18    or schedules, but it does not include elimination or change of

19    essential job functions, assignment of essential job functions

20    to other employees, or lower productivity standards.

21    Now, once an employer is aware of an employee's

22    disability and an accommodation has been requested, the employer

23    must discuss with the employee or, if necessary, with her doctor

24    whether there is a reasonable the accommodation that will permit

25    her to perform the job.  Both the employer and the employee must

1    cooperate in this interactive process in good faith.

2            Neither party can win this case simply because the

3    other did not cooperate in this process, but you may consider

4    whether a party cooperated in this process when deciding whether

5    a reasonable accommodation existed and whether to award punitive

6    damages.

7            Now, under the ADA, the defendants do not need to

8    accommodate Ms. Zych if it would cause an "undue hardship" to

9    its business.  An "undue hardship" is something too costly or

10   something that is so disruptive that it would fundamentally

11   change the nature of the defendants' business or how the

12   defendants run their business.

13           The defendants must prove to you by a preponderance of

14   the evidence that Ms. Zych's proposed accommodation would be an

15   "undue hardship."  In deciding this issue, you should consider

16   the following factors:

17           1.  The nature and cost of the accommodation;

18           2.  The defendants' overall financial resources.  This

19   might include the size of its business, the number of people it

20   employs, and the types of facilities that it runs;

21           3.  The financial resources of the facility where the

22   accommodation would be made.  This might include the number of

23   people who work there and the impact that the accommodation

24   would have on its operations and costs; and

25           4.  The way that defendants conduct their operations.

1    This might include their workforce structure; the location of

2    their facility where the accommodation would be made compared to

3    the defendants' other facilities; and the relationship between

4    these facilities.  And

5         5.  The impact of the accommodation upon the operation

6    of the facility, including the impact on the ability of other

7    employees to perform their duties and the impact on the

8    facility's ability to conduct business.

9         Now, in this case, the defendants also say that they

10   did not accommodate Ms. Zych and terminated her employment

11   because accommodating and retaining her would have created a

12   significant risk of substantial harm to her and/or others in the

13   workplace.  The defendants must have based this decision on a

14   reasonable medical judgment that relied on the best available

15   objective evidence about whether Ms. Zych could safely perform

16   the essential functions of the job at the time.  If defendants

17   prove this to you by a preponderance of the evidence, you must

18   finds for the defendants.

19        Now, if in deciding this is true, you should consider

20   the following factors:

21        1.  How long the risk will last.

22        2.  The nature and the severity of the potential harm;

23        3.  How likely it is that the harm will occur; and

24        4.  Whether the potential harm is likely to occur in

25   the near future.

1    The defendant must prove that there was no reasonable

2    accommodation that it could make that would eliminate the risk

3    or reduce it so that it was no longer a significant risk of

4    substantial harm.

5    Now, during the course of the trial, you have heard

6    testimony that Margaret Zych had a work-related injury and was

7    given a 5 percent permanent partial disability rating for

8    purposes of the workers' compensation system, and that she

9    received workers' compensation benefits.

10   The definition of "disability" under the ADA, which I

11   have given you, is different from the definition of "disability"

12   for purposes of workers' compensation.  Thus, the fact that

13   Ms. Zych had a disability rating for purposes of workers'

14   compensation and received workers' compensation benefits for her

15   injury is not determinative on the issue of whether she had a

16   disability under the ADA.

17   In determining whether Ms. Zych had a disability at

18   the time of her termination, you should consider all of the

19   evidence, but only as it relates to the definition under the

20   ADA.

21   Now, in this case the EEOC has sued two defendants,

22   AutoZoners, LLC and AutoZone, Inc.  AutoZoners, LLC stipulates

23   to being Ms. Zych's employer for purposes of this lawsuit.

24   However, the parties dispute whether AutoZone, Inc. was also

25   Ms. Zych's employer.  Therefore, you must consider whether

1  AutoZone, Inc. was, in addition to AutoZoners, LLC, Ms. Zych's

2  employer.  The EEOC bears the burden of proving by a

3  preponderance of the evidence that AutoZone, Inc. was also

4  Ms. Zych's employer.

5  AutoZone, Inc. was Ms. Zych's employer if it so far

6  controlled her employment relationship that it is appropriate to

7  regard AutoZone, Inc. as her de facto or indirect employer.

8  No single fact is determinative.  You may consider any

9  evidence that is relevant to your determination of whether

10 AutoZone, Inc. exercised such control of Ms. Zych's employment

11 that it is appropriate to regard it as Ms. Zych's de facto

12 employer.

13 If you find that the EEOC has proved any of its claims

14 against the defendants, then you must determine what amount of

15 damages, if any, Ms. Zych is entitled to recover.  The EEOC must

16 prove its damages on behalf of Ms. Zych by a preponderance of

17 the evidence.

18 If you find that the EEOC has failed to prove any of

19 its claims, then you will not consider the question of damages.

20 You may award compensatory damages only for injuries

21 to Ms. Zych that the EEOC has proved by a preponderance of the

22 evidence were caused by defendants' wrongful conduct.

23 Your award must be based on evidence and not

24 speculation or guesswork.  This does not mean, however, that

25 compensatory damages are restricted to the actual loss of money.

1   They include both the physical and mental aspects of injury,

2   even if they are not easy to measure.

3        Now, in calculating damages, you should not consider

4   the issue of lost wages and benefits.  The court will, if

5   necessary, calculate and determine any damages for past or

6   future lost wages and benefits.  You should consider the

7   following types of compensatory damages and no others:  The

8   mental and emotional pain and suffering that Ms. Zych has

9   experienced and is reasonably certain to experience in the

10  future.  No evidence of the dollar value of mental or emotional

11  page and suffering has been or needs to be introduced.  There is

12  no exact standard for setting the damages to be awarded on

13  account of pain and suffering.  You are to determine an amount

14  that will fairly compensate Ms. Zych for the injury she has

15  sustained.

16       Now, if you find for the EEOC, you may, but are not

17  required to, assess punitive damages against the defendants.

18  The purposes of punitive damages are to punish a defendant for

19  its conduct and to serve as an example or warning to defendants

20  and others not to engage in similar conduct in the future.

21       The EEOC must prove by a preponderance of the evidence

22  that punitive damages should be assessed against the defendants.

23  You may assess punitive damages only if you find that the

24  conduct of the defendants was in reckless disregard of

25  Ms. Zych's rights.  An action is in reckless disregard of

1   Ms. Zych's rights if taken with knowledge that it may violate

2   the law.

3           Now, the EEOC must prove by a preponderance of the

4   evidence that the defendants' managerial employees acted within

5   the scope of their employment and in reckless disregard of

6   Ms. Zych's right to reasonable accommodation or the right not to

7   be discriminated against.  You should not, however, award

8   Ms. Zych punitive damages if the defendants proved that it made

9   a good faith effort to implement an antidiscrimination policy.

10          If you find that punitive damages are appropriate,

11  then you must use sound reason in setting the amount of those

12  damages.  Punitive damages, if any, should be in an amount

13  sufficient to fulfill the purposes that I have described to you,

14  but should not reflect bias, prejudice, or sympathy toward

15  either or any party.  In determining the amounts of punitive

16  damages, you should consider the following factors:

17          the reprehensibility of the defendants' conduct;

18          the impact of the defendants' conduct on the

19  plaintiff;

20          the relationship between Ms. Zych and the defendants;

21          the likelihood that the defendants would repeat the

22  conduct if an award of punitive damages is not made; and

23          the relationship of any award of punitive damages to

24  the amount of actual harm Ms. Zych suffered.

25          Now, this case is going to be submitted to you in the

1    form of a Special Verdict consisting of seven questions.  A form

2    of the Special Verdict has been prepared for your convenience.

3           Now, what I'm going to do at this time is read the

4    Special Verdict that you're going to be -- that's going to be

02:03  5    given to you. I'm going to give you plenty of copies of the

6    Special Verdict so you'll have it in the jury room.  But this is

7    the original.  And I know that because it says "original" on the

8    top, and I wrote it there.  This is the verdict that you will

9    fill out and return in open court.  But again, as I said, I'll

02:04  10   give you Special Verdict forms for you to use in the jury room.

11          And it reads as follows:

12          "We, the jury, empaneled and sworn to try the issues

13   in this action, being directed by the court to answer the

14   following questions submitted to us for verdict find and answer

02:04  15   as follows:

16          "Question No. 1.  Has the EEOC proven by a

17   preponderance of the evidence that Margaret Zych was a qualified

18   individual with a disability or a record of disability at the

19   time her employment was terminated?"

02:04  20          There's a place for your answer "yes" or "no."

21          And then in italics beneath this it says:

22          "If you answered 'yes' to Question No. 1, answer

23   Question No. 2.

24          "If you answered 'no' to Question No. 1, do not answer

02:04  25   any more questions.  Please sign and date the final page of this

1    verdict form."

2              But let's go to Question No. 2.  It reads:

3              "Has the EEOC proven by a preponderance of the

4    evidence that AutoZone terminated Margaret Zych because of her

5    disability and/or record of disability?"

6              And again there's a "yes" or "no."  And then there's

7    instructions afterwards, if you answer a certain way go on or if

8    you answer a certain other way don't go on.  Make sure you read

9    those instructions after every question.

10             Question No. 3 reads:  "Has the EEOC proven by a

11   preponderance of the evidence that Margaret Zych suffered mental

12   or emotional pain and suffering as a result of AutoZone's

13   termination of her employment?"

14             Again there's a place for an answer "yes" or "no."

15             In italics there are instructions underneath that

16   depending upon your answer.  Please read them.

17             No. 4 reads:  "What sum of money, if any, will fairly

18   and reasonably compensate Margaret Zych for the mental or

19   emotional pain she suffered as a result of AutoZone's

20   termination of her employment?"

21             And then there's a place that says "amount" and then a

22   blank space.

23             "Question No. 5:  Has the EEOC proven by a

24   preponderance of the evidence that AutoZone acted with reckless

25   disregard of Margaret Zych's rights under the ADA?"

27

1    And there's an answer, "yes" or "no."  And again under

2    italics there's instructions as to whether to proceed further or

3    not depending upon how you answer that.

4    "Question No. 6:  What sum of money, if any, should be

5    assessed against AutoZone for its reckless disregard of Margaret

6    Zych's ADA rights?"

7    Again there's a place for an amount.

8    And finally, there's Question No. 7:  "Has the EEOC

9    proven by a preponderance of the evidence that AutoZone, Inc.

10    was an employer of Margaret Zych?"

11    Again there's a place for your answer "yes" or "no."

12    And then at the bottom it says "please sign and date the final

13    page of this verdict form," a place for your foreperson to sign

14    it, and the date.

15    Now, I brought this to your attention but you will

16    note that certain questions in the verdict form are to be

17    answered only if you've answered a previous question in a

18    particular manner.  Therefore, it is important that you read

19    each question very carefully before you answer it.  Do not

20    needlessly answer questions.  Your duty is to answer the

21    questions in the Special Verdict form which according to the

22    evidence and my instructions you are required to answer to

23    arrive at a completed verdict.  It then becomes my duty to

24    direct judgment according to law and according to the facts as

25    you have found them.

1   You are to answer the questions in the Special Verdict

2   form solely upon the evidence received in this trial.  You are

3   to be guided by my instructions and your own sound judgment in

4   considering the evidence in the case and in answering each

5   question.

6   You must not concern yourselves about whether your

7   answers will be favorable to one party or to the other, nor with

8   what the final result of the lawsuit may be.  Your verdict must

9   represent the considered judgment of each juror.  Your verdict,

10  whether for or against the parties, must be unanimous.

11  You should make every reasonable effort to reach a

12  verdict.  In doing so, you should consult with one another,

13  express your own views, and listen to the opinions of your

14  fellow jurors.  Discuss your differences with an open mind.  Do

15  not hesitate to re-examine your own views and change your

16  opinion if you come to believe it is wrong.  But you should not

17  surrender your honest beliefs about the weight or effect of

18  evidence solely because of the opinions of your fellow jurors or

19  for the purpose of returning a unanimous verdict.

20  All of you should give fair and equal consideration to

21  all the evidence and deliberate with the goal of reaching an

22  agreement that is consistent with the individual judgment of

23  each juror.

24  You are impartial judges of the facts.  Your sole

25  interest is to determine whether the parties have proved their

29

1  respective cases by the applicable standards of proof as I have

2  instructed you.

3         I have a short concluding instruction that I will give

4  to you but only after we've heard the arguments of counsel.

5         Are we okay to keep going?  Do we need a break or --

6  okay.  Ms. Kamp, you may proceed.

7         MS. KAMP:  Thank you, Your Honor.

8         (Closing arguments presented.)

9                          *      *      *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, JOHN T. SCHINDHELM, RMR, CRR, Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of my original machine shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Signed and Certified May 4, 2015.

/s/John T. Schindhelm

John T. Schindhelm

John T. Schindhelm, RPR, RMR, CRR
United States Official Reporter
517 E Wisconsin Ave., Rm 236,
Milwaukee, WI 53202
Website: WWW.JOHNSCHINDHELM.COM
